#### KANE *against* ASTOR'S EXECUTORS and others.

Where a testator, who had made in his will certain gifts of real and personal estate to the plaintiff, of which some were legacies and devises absolutely and in fee simple; some in remainder after the death of her mother, brothers and sisters, and others to her for life, and then to her surviving issue, afterwards executed a codicil, by the first clause of which he took from the plaintiff all such interests in land as were in the will *given to her on his decease*, giving one-half thereof to his executors in trust to receive the rents, issues and profits for the life of the plaintiff and for her use; and by the second clause he took from the plaintiff all estates and interests, both in real and personal property, to which she would have been entitled under the will after the death of her mother, brothers and sisters, and gave them to others; it was *Held:* That the first clause of the codicil was limited in its operation to devises which, by the provisions of the will, would have taken effect *in possession* at the testator's death, and did not embrace future estates, though they were vested remainders at the time of the will taking effect. That the second clause embraced estates and interests in real and personal property, which had been given to the plaintiff by the will, to take effect in possession at the death of her mother, brothers or sisters, though they might be of that class of gifts which were *vested in interest* at the death of the testator.

Where, by another clause in such codicil, the testator gave to the plaintiff's mother a power to appoint and give to the plaintiff and her issue one-half in value of the estates taken by the codicil from the plaintiff and given to others, and where the plaintiff's mother had executed such power by appointing in general terms to the plaintiff and her issue all "such part of the real and personal estate" as she was authorized by the codicil to appoint; it was *Held:* That such deed of appointment did not create future estates in favor of the issue of the plaintiff in property which by the primary gifts had been bequeathed or devised in fee to the plaintiff; but that in that class of gifts, the plaintiff took the same estates in the shares conveyed by the power, which she would have taken under the primary devise.

THE complaint in this cause was exhibited in July, 1850; and its object and prayer is to obtain a construction of parts of the will of the late John Jacob Astor, and of certain codicils thereof. The plaintiff is the wife of the defendant, De Lancey Kane, and the daughter of the defendant, Dorothea A. Langdon, who is a daughter of the testator. The other defendants are the six executors of the will, one of them, William B. Astor, being also residuary devisee and legatee, the brothers and sisters of the plaintiff, her children, and the husband of her sister. The will bears date on the 4th day of July, 1836, and the testator died on the 29th day of March, 1848, having, after making the will, executed eight several codicils, at different periods, the last being dated the 22d December, 1843. The questions in litigation mainly concern the family of Mrs. Langdon, and they relate to the effect of the sixth codicil upon certain devises and legacies to the plaintiff, or in which she and her issue are interested; which are contained in the will, and in the first, second and fifth codicils. The testator left surviving him, besides his daughter, Mrs. Langdon, two sons, John Jacob and William B. Astor, and a grandson, Charles Bristed, the son of a deceased daughter  When the will was executed, another daughter, Mrs. Rumpff, who had married in Europe, was living; but she died before his testamentary dispositions were completed. The children of Mrs. Langdon, living at the death of the testator, were the plaintiff, whose marriage

to Mr. Kane took place between the making of the fifth and sixth codicils, Eliza, the wife of Matthew Weeks, Sarah, the wife of Robert Boreel, Cecilia Langdon, who has since intermarried with the defendant, Jean de Nottbeck, Walter Langdon, Jr., Woodbury Langdon and Eugene Langdon. When the will was made there was another son of Mrs. Langdon living, John J. A. Langdon, but he died before the execution of the first codicil.

The devises and bequests in favor of the plaintiff and her issue are the following: By the first clause of his will he gave to his daughter, Dorothea Langdon, for life, his silver plate (with certain exceptions); $100,000 of the five per cent. debt of the city of New-York; five hundred shares of the capital stock of the Bank of America; one thousand shares of the capital stock of the Manhattan Company; $25,000 in the certificates of the New-York Life Insurance and Trust Company, and a house and lot on La Fayette Place, occupied by her. "On her death [he gave] the said plate (except as above), sums of debt and deposit and stocks to her then surviving issue, their executors and administrators." He also devised the house and lot "to her then surviving issue and their heirs and assigns forever; intending that if any of her children shall have died before her, leaving issue, such issue are together to take what their parent would have taken if surviving."

By the second clause he gave to six of the children of Mrs. Langdon, naming them, including the plaintiff, and being all of them except Mrs. Boreel, all his lots on the easterly side of La Fayette Place and fronting on it, and those in rear of them and extending to the Bowery and fronting on it; also all his lands lying between Charlton, Morton and Greenwich streets and the Hudson river, being one hundred lots, "to have and to hold to them, my said grandchildren, in equal shares for and during their lives respectively: and on the death of each of them, my

grandchildren, I give the share which he or she shall have enjoyed for life to their surviving issue in fee simple, to be divided according to the number of their children ; and in case of death without issue then surviving, I devise the share of such deceased to my said other grandchildren above named then surviving in fee simple."

In the third clause there is a devise and a bequest directly to the plaintiff, namely, a devise of four lots of land on the west side of Broadway, between Prince and Houston streets, to the plaintiff and her three sisters " or to such of them as may survive me," in equal shares, during their lives. · There is then a limitation of a remainder in fee in their respective shares to their surviving issue, and in case of death without issue them surviving a devise of the share of each to her then surviving sisters in fee; a bequest to the plaintiff and her brothers and sisters, except Mrs. Boreel, of $25,000 each, on their respectively attaining the age of twenty-four years, and an equal sum each on their attaining the age of thirty years.

In the same clause there is a devise to Mrs. Boreel, with a contingent limitation in favor of the plaintiff, thus : The City Hotel is devised to Mrs. B. for life, with remainder to her surviving issue, and in case of her death without issue, the property is devised to her brothers and sisters in fee.

By the fifth clause the testator devises sundry lots of land to his grandson, Charles Bristed, for life, and he bequeathes to him for life the interest on $115,000. On his death he gives the lots and the capital sum of $115,000 to his then surviving issue in fee and absolutely to be divided according to the number of his children. In case of his death without such issue he gives the lots and money, one-half to the children of William B. Astor and one-half to the children of Mrs. Langdon. After various other devises and bequests the testator gives the rest and residue of his estate, real and personal, to his son, William B.

Astor, for life, with power to appoint the same after his death among his children. and their issue, with a direction to him to employ the personal estate in the improvement of the real. By the first codicil this is modified so as to give to W. B. Astor one-half of the residuary personal estate absolutely.

The tenants for life under any devise in the will are authorized to make leases for terms not exceeding twenty-one years, and also to sell to the extent of one-half in value of the lands held by them, to raise money for the improvement of the residue, but the execution of the powers requires the assent of one of the executors.

By the first codicil, dated January 19th, 1838, and in the second clause, the testator, after reciting that his grandson, John J. A. Langdon, had departed this life, whereby two legacies of $25,000 each had become lapsed, adds to the devise contained in the second clause of his will in favor of the children of Mrs. Langdon therein named, or such of them as should survive him, three lots of land lying on the westerly side of La Fayette Place, which lots he devises to his said grandchildren in equal shares, as tenants in common for their lives respectively, and on the death of each, devises his or her share to his or her surviving issue in fee; and in case of death without surviving issue, he devises the share of the one so dying to his surviving brothers and sisters named in that clause in fee.

In the second codicil, dated January 9th, 1839, a provision is made in which the plaintiff has a future interest, in the following words:

"*First.* In order more comfortably to accommodate my unfortunate son, John, I have provided for the erection of a dwelling-house on Fourteenth-street, in the city of New-York, upon a certain piece of land which I attach thereto, bounded as follows:" " which house I intend to furnish and provide for his convenience and that of the persons who

from time to time shall take charge of his personal comfort. Now, therefore, I do hereby give to my son John the said house and land, with the furniture appropriated thereto; to have and to hold so long during his life as the same shall be used and kept for his personal accommodation and convenience; with remainder to my daughter Dorothea, to be held by her so long during her life as she shall use the same or the income thereof for her own use, free from all control or interference of her husband, and so long as she or her husband shall not attempt to dispose of her interest therein, and shall not permit the same to be incumbered or taken under any incumbrance, and not longer. And in case, during her life, she or her husband, or any claiming under or against them, shall attempt to incumber or divert the same from her actual use, then I give the same to my executors in trust during her life, to receive the rents and profits thereof and apply the same to her use, for which her receipts shall be a full voucher to my executors. After her death I give and devise the said lands and furniture, one equal half part thereof to the then surviving children and issue of my daughter Dorothea, the other half to the then surviving children and issue of my son William, taking in fee simple, and the issue representing its parent deceased." In relation to this land there was a power given to the executors to lease or sell it, but in case of a sale, the proceeds were limited in the same manner as the land.

In a subsequent clause of the second codicil there is a bequest to Mrs. Langdon of the income of $100,000 deposited on interest with the New-York Life Insurance and Trust Company, and on her death the capital is given to her six children (including of course the plaintiff), or such of them as should survive the testator, to be equally divided among them, and to be accumulated, as to the share of each one under the age of twenty-one years, for his or her benefit; and on their attaining that age respectively to be paid to them by the executors. The

clause proceeds: " And if any of them shall die before that age without surviving issue, his or her share shall be given to the survivors." There is then given in the same clause to the six children of Mrs. Langdon, or to such of them as should survive the testator, $100,000 of the public debt of the city of New-York, bearing five per cent interest, usually called the water loan, "to be paid to each on their attaining their age of twenty-one years, and the interest of the shares of those under that age to be accumulated for their benefit until that period; and in case any of them shall die before that age without surviving issue, then his or her shares shall go to the survivors." In the next clause of the same codicil, the testator devises to the same six grandchildren, or such of them as may survive him, in equal shares for life, five lots on Grand-street, between Ludlow and Orchard streets, and four other lots on Grand-street, between Norfolk and Essex streets ; " and on the death of each, I give the share enjoyed by such deceased, to his or her issue then surviving, in fee simple, to be divided according to the number of his or her children ; and if such deceased shall leave no surviving issue, then I give the share of such deceased to the survivors of the said six, their heirs and assigns forever."

By the fifth codicil, in the fourth clause, the testator devises to the plaintiff lot number four in an allotment which he had caused to be made of land on La Fayette Place, in fee, with a power to his executors to settle the same to the plaintiff's separate use for life, with authority in her to appoint the fee among her brothers and sisters and to make leases.

So much of the sixth codicil, executed June 3d, 1841, as relates to the plaintiff, is in these words :

"*First.* As to all such shares, estates and interests in land (except the lot on the west side of La Fayette Place, mentioned beneath), as are in my will, or in any codicil thereto,

given on my decease to Louisa, daughter of Mrs. Dorothea Langdon, or to the issue of the said Louisa, I give one-half thereof to the other children of my daughter Dorothea, to be taken and held as an increase of the shares or sums given to them and their issue in the same property; the other half I give to my executors in trust, to receive the rents, issues and profits thereof for the life of the said Louisa, and to apply the same to her use, clear of any control, debts or right of her husband thereto; and after her death I give the same to her surviving children, or, if she leaves none, to her surviving brothers and sisters or their issue.

"*Second.* As to all estates, rights or interests in lands, stocks, personal effects or money, to which the said Louisa or her issue would have been entitled under my will or any codicil thereto, after the death of her mother, brothers or sisters, I give the same to her brothers and sisters and their issue, as an increase of their respective shares or interests in the same property.

"*Third.* As to the two legacies of twenty-five thousand dollars each, and the share of water stock to which the said Louisa would have been entitled under my will and a codicil thereto, I revoke the two legacies entirely. I give the income of her share of stock to my daughter Dorothea for life, and on her death I give the capital to her other children, and their issue in case of their decease.

"*Fourth.* As to the lot on the westerly side of La Fayette Place, given to the said Louisa in a codicil to my will, I give the same to Cecilia Langdon, to be had and holden as if her name had been written in the devise thereof instead of Louisa, with every advantage, power and benefit, and subject to every condition, power and limitation therein contained.

"*Fifth.* I expressly authorize my daughter Dorothea Langdon, by deed or will, to appoint and give to the said Louisa and her issue, or to her or their use, any part not exceeding

in value one-half of the real or personal estate by this codicil taken from Louisa and given to others.

\*    \*    \*    \*    \*    \*

"*Last.* I publish this as a codicil to my will, and as altering and revoking the same and the codicils thereto, so far as a different disposition is made by the present codicil."

There is a provision in the first codicil directing that in case any disposition in the will or in that or any future codicil should be held invalid, that nevertheless all the other parts thereof should be deemed valid : and when any devise or legacy shall prove invalid the property attempted to be given shall still be given to the persons for whose benefit the same appears to have been intended, and the executors are accordingly directed so to appoint the same.

The will and each of the codicils were attested anew on the 11th day of January, 1845, upon the acknowledgment of the testator.

Shortly after the death of the testator, and on the 6th day of April, 1848, Mrs. Langdon executed under her hand and seal an instrument, whereby, after referring to the power conferred upon her by the sixth codicil, she declares that she has appointed and given, and thereby does appoint, give and convey unto the plaintiff, " such part of the real and personal estate by said ·codicil taken from the said Louisa and given to others, as in and by said codicil I am authorized to give and appoint to the said Louisa and her issue, to have and to hold the same and every part and parcel thereof unto the said Louisa and her issue in as full and complete a manner as I can or may appoint and give under the provisions of the said codicil or any part thereof."

The complaint charges that some of the defendants set up claims and pretensions inconsistent with the plaintiff's rights ; that she is advised that the provisions in her favor are not revoked or changed by the sixth. codicil, which she insists is inoperative and void on account of uncertainty ; but if this is not so, then she claims that the devises and

bequests to her are restored by the execution by her mother of the power of appointment. She therefore prays that the meaning and construction of the will and codicils may be settled by the judgment of the court.

The defendants who are of lawful age, by their answers insist upon the sixth codicil as a revocation in part of the provisions in favor of the plaintiff, and they and the infant defendants submit themselves to the judgment of the court.

The cause was heard on pleadings and proofs in the superior court, at a special term before the late Justice PAINE, who on the 7th day of May, 1851, made an order dismissing the complaint with costs.

The plaintiff appealed to the general term, where a judgment was given, in May, 1852, reversing the judgment of the special term and declaring the effect of the several testamentary dispositions of the will and codicils, as respects the plaintiff, and settling the rights of the parties in much detail. (5 *Sandf. S. C. R.*, 467.)

The judgment affirms the validity of the sixth codicil, and declares that the instrument of appointment executed by Mrs. Langdon was a valid execution of the power. It also adjudges: 1. As to lot number four on La Fayette Place, devised to the plaintiff in fee by the fifth codicil, that the plaintiff is entitled to an equal half part of it for life, with a vested remainder in fee on her death in her children then born, subject to a like estate in remainder in her children thereafter to be born, to vest on their birth; all the children to take equal shares. 2. The several lots of land devised to the plaintiff, in connection with her five brothers and sisters, for life, with remainder to her surviving issue, and in default of issue living at her death to her brothers and sisters named in the respective devises, are disposed of together. These are the lots on the easterly side of La Fayette Place, and those in the rear and extending to the Bowery; and the lands lying between Charlton, Morton

and Greenwich streets and the Hudson river, mentioned in
the second clause of the original will; the three lots on the
westerly side of La Fayette Place, added to the last men-
tioned devise by the second clause of the first codicil; and
the nine lots on Grand-street, devised by a clause of the
second codicil. The judgment declares that the plaintiff is
entitled to one-fourth of one-sixth part of this property for
life, and that the present and after born children are together
entitled to the same part in remainder in fee on her death;
that the remainders are vested in those now in being, and
to vest in the others on their birth; that the executors are
entitled to an estate in one-half of one-sixth of the property
during the life of the plaintiff upon the trusts mentioned in
the first clause of the sixth codicil, and on her death her
surviving children are entitled to the same part in fee. 3.
The devise to the plaintiff and her three sisters for life,
with remainder to their issue, of the four lots on Broadway,
between Prince and Houston streets, contained in the third
clause of the original will, which depends upon the same
principle as the last, is disposed of by the judgment in the
same way; the only difference being as to the aliquot
shares. The share of the plaintiff and her children is one-
fourth of one-fourth, and the executors take one-half of
one-fourth in trust, and the children a remainder in fee
as in the last case. 4. As to the $100,000 of the public
debt of the city of New-York, called water stock,
which by the second codicil is given to the plaintiff
and her six brothers and sisters, with a provision for accu-
mulation, &c., the judgment declares that the plaintiff is
entitled to one-half of one-sixth part of it for the life of
her mother, and for her own life, if she survives her; and
that on the plaintiff's death her issue are entitled to the same
share absolutely. 5. The judgment declares that the plain-
tiff is entitled to the income of one-half of each of the
two legacies of $25,000 given her by the third clause of
the will, from the time they became payable and after she

had attained the age as to each legacy prescribed in the bequest; and that after her death her issue are entitled to said equal half of said legacies absolutely. 6. The remainders limited in favor of the plaintiff in the house and lot devised to Mrs. Langdon for life by the first clause of the will, and in the dwelling-house and land on Fourteenth-street, devised to the testator's unfortunate son, J. J. Astor, and to Mrs. Langdon for life, were according to the primary devises vested in interest on the death of the testator and were to vest in possession on the death of Mrs. Langdon, and that the remainders were liable to be divested by the death of the plaintiff during the continuance of the life estates, and that in case of her death before the termination of those estates her issue would have taken the remainder in her place. That by force of the sixth codicil, and the instrument of appointment, the executors take in remainder one-half of the share which would have belonged to the plaintiff, upon the trusts and with the subsequent limitations mentioned in the first clause of the said sixth codicil, and that the plaintiff takes a vested remainder for life in one-fourth part of what would have been her share by the original devises, and on her death her issue take the last mentioned share in remainder in fee. 7. The judgment declares the following pecuniary legacies to be unaffected by the provisions of the sixth codicil, viz.: The household furniture, stocks and money bequeathed to Mrs. Langdon for life, and to her surviving issue on her death by the first clause of the will; the sum of $100,000, deposited in the New-York Life Insurance and Trust Company, also bequeathed to Mrs. Langdon for life with a similar limitation by the second codicil; and the furniture provided for the use of J. J. Astor in the house on Fourteenth-street, bequeathed and limited in a similar manner. It states that they are vested legacies, and therefore not within the description of personal effects or money to which the plaintiff would have been entitled after the death of her mother, according to the terms

of the second clause of the sixth codicil; and that as the first clause does not embrace personal property these legacies are untouched. 8. The eighth division of the judgment disposes of the contingent estates in land limited in favor of the plaintiff and her issue in the event of the death without issue of her brothers and sisters and of Charles Bristed; and in favor of her issue in the event of the plaintiff's dying before the vesting in possession of the future estates limited to her, and in which her issue are to stand in her place in case of her death before the termination of the precedent estates. It assumes that the provisions are revoked by the second clause of the sixth codicil, so far as they relate to the plaintiff and her issue; and that one-half thereof are given back by the execution of the deed of appointment to the plaintiff for life, with remainder in fee to her issue as to those which would take effect in favor of the plaintiff, and to her issue in fee as to those which may take effect in favor of such issue. 9. A like provision as to the contingent legacies in favor of the plaintiff and her issue is made, bringing them all within the scope of the second clause of the sixth codicil, and restoring them with a new limitation by force of the instrument of appointment.

The remainder of the judgment consists of directions for carrying out the provisions already mentioned. No costs are given to the parties against the others.

The plaintiff appeals severally from the whole judgment. The executors appeal from so much of the judgment as adjudges that the plaintiff and her issue are entitled to the two legacies of $25,000 each, mentioned in the third clause of the will; and Mr. De Nottbeck and his wife appeal from that part of it which relates to the devise of the house and lot on La Fayette Place in the first clause of the will, and to the devise of the estate on Fourteenth-street, and also from that part of the seventh

division of the judgment which declares that the legacies therein mentioned are unaffected by the sixth codicil.

*J. J. Ring*, for the plaintiff.

*W. C. Noyes*, for the infant children of Mr. and Mrs. Kane.

*J. Coit*, for De Nottbeck and wife.

*D. Lord*, for the executors and Mrs. Langdon.

DENIO, J., delivered the opinion of the court.

In order to adjust the language used in the sixth codicil of the testator's will to the subjects on which it was intended to operate, it is necessary to have a distinct understanding of the character of the provisions in favor of the plaintiff and her descendants contained in the will and prior codicils. She and they were beneficiaries in devises and bequests of both real and personal property. In regard to real estate there is but a single devise to her of an estate in fee simple commencing in possession at the death of the testator. This is of a lot on La Fayette Place, mentioned in the fifth codicil. There is a class of devises in which she takes an estate for life commencing in possession at the death of the testator, with remainder to her issue living at the time of her death, and in default of such issue to her brothers and sisters, or to certain of them, named in the particular devise. The devise in the second clause of the will, of certain lots on La Fayette Place, and others lying between Charlton, Morton and Greenwich streets and the Hudson river; that in the third clause of four lots on Broadway ; that in the first codicil of three lots on the westerly side of La Fayette Place, and that in the second codicil of nine lots on Grand-street, belong to this class. All the other provisions in her favor, where the subject is real property, are devises of future estates, and they are either vested at

the time of the taking effect of the will, or contingent upon the happening of some subsequent event.

Then as to personal property : There is a bequest of two legacies of $25,000 each by the third clause of the will. These are given, as to one, on the plaintiff's becoming twenty-four, and as to the other on her arriving at thirty years of age; and also a legacy of one-sixth part of $100,000 of city stock by the second codicil, payable on her attaining twenty-one years of age. All other bequests of personal estate to the plaintiff are to take effect in possession only after the death of some prior legatee for life. There is another diversity in these provisions to be borne in mind in interpreting the sixth codicil, viz: In several instances the gifts are to the plaintiff in common, sometimes with all her brothers and sisters, and sometimes with a part of them. There is no difference of opinion as to the primary effect of this codicil upon the lot devised to the plaintiff in fee by the fifth codicil, or as to the two legacies and the share of the water stock given to the plaintiff by the third clause of the will. These are taken from her by the third and fourth clauses of the sixth codicil; and the only question is as to the application to them of the power of appointment conferred upon Mrs. Langdon by the fifth clause. But the construction of the first and second clauses of the sixth codicil has given rise to much discussion. The counsel for the plaintiff maintains that these clauses are so indefinite and uncertain that no effect can be given to them, and that therefore the disposition in her favor by the will and prior codicils must stand unrevoked. Conceding that a different disposition of the property must be effected by the codicil in order to produce a revocation of the prior gifts, the court is yet bound to make a faithful effort, by the application of sound reason and the established rules of construction, to ascertain the true meaning of the instrument in question. It is quite apparent that when the sixth codicil was executed a change

had taken place in the intention of the testator in respect to the plaintiff, and that he then determined very materially to modify the provisions which he had made in her favor. It may be certainly assumed that he did not mean to commit to her at his death, or prospectively from that event, the unqualified ownership of any considerable part of his property; but that he intended to make a certain provision for her, and to intrust to the discretion of her mother the power to restore to her a part of that which he had thus determined to withhold from her. The draftsman of the codicil in question attempted to effect these objects, not by re-writing the former testamentary instruments, but by a few comprehensive and at the same time discriminating sentences referring to those former instruments, to accomplish the object of the testator.

The court below considered it material to determine in the outset which of the several provisions in favor of the plaintiff created vested interests, and which of them were contingent upon the happening of some future event, and having arranged them into classes according to this distinction, proceeded to apply the language of the sixth codicil, with reference to a certain extent, to that classification.

The first clause relates exclusively to devises of real estate. It is limited also to property in real estate which by the former provisions the testator had given to the plaintiff or her issue *on his decease*. The second clause deals with antecedent gifts of personal as well as of real estate, but is limited to interests to which the plaintiff or her issue would, by the former provisions, have been entitled "after the death of her mother, brothers and sisters."

The judgment in the court below proceeds on the theory, that the first clause embraces not only the devises to the plaintiff and her issue of land which she would have been entitled to the possession of on the death of the testator, but also the devises to them of future estates, provided they belonged to the class of such estates which are held to be

Kane *against* Astor's Executors.

vested in interest at the time of the taking effect of the
will.  By giving that construction to the first clause, it
became necessary to hold that the second clause only
embraced devises and legacies which vested for the first
time upon or after the death of the plaintiff's mother,
brothers and sisters; in short, to limit that clause to gifts
which were contingent on the testator's death, and until
the death of those relatives.  This construction has a very
important bearing upon some of the most valuable gifts in
the will.  It gives to the executors an estate in remainder
on the death of Mrs. Langdon in one-half of the share
devised to the plaintiff of the lot on La Fayette Place,
mentioned in the first clause of the will, and in what would
have been the plaintiff's share of the property on Four-
teenth-street, devised by the first clause of the second codi-
cil, for the life of the plaintiff, and for her benefit, with a
further remainder in that half to her surviving issue; and
under the instrument of appointment a like estate in remain-
der in the plaintiff herself in one-half of the remaining
half for her life, and then to her issue in fee; whereas, if
these devises are held to fall within the second clause of the
codicil, the executors take no estate whatever, but the
plaintiff and her issue are simply entitled under the deed
of appointment to one-half of the property after the death
of Mrs. Langdon.  And what is still more material, the
plaintiff's share in the legacies of personal property under
the first clause of the will and under the second codicil, of
which by those provisions she was to have come into posses-
sion on the death of her mother, are held to be wholly
unaffected by the sixth codicil.  The court below correctly
hold that these legacies are not within the first clause,
because that does not embrace gifts of personal property;
but they hold them not to be within the second clause for
the reason that they are gifts which would have vested in
interest at the death of the testator, and not, as the court
hold, such as, according to the language of the second clause,

"Louisa or her issue would have been entitled" *to* "after the death of her mother, brothers or sisters."

With a strong disposition not to disturb a judgment which is evidently the result of much reflection, I am yet unable to concur with the court below in its construction of these clauses. In my opinion, the first clause embraces all devises of real estate (except the lot specially excepted) of which the plaintiff would have been entitled to the enjoyment on the testator's death if the sixth codicil had not been made, and is strictly confined to that class of devises: and I am further of opinion that the said clause embraces all legacies, as well as devises, which by the primary provisions would first take effect in possession at the death of her mother, though it should be held that they belong to the class of gifts which vest in interest at the death of the testator. I have been led to these conclusions by the following considerations: 1. The language employed to discriminate between the two classes of gifts is, "given *on my decease* to Louisa," as to the first clause ; and in the second, "to which the said Louisa would have been entitled" "*after the death of her mother, brothers and sisters.*" The most natural construction is that the periods indicated are those when the gifts were to commence in possession and enjoyment. The distinction between vested and contingent devises depends upon the application of highly artificial rules, and would be less likely to be in the mind of the testator than the more obvious test of the right to actual enjoyment. 2. The devise in trust to the executors by the first clause requires an estate in possession at the death of the testator. They are to receive the rents and profits and to apply them to the use of the plaintiff, which they could not do in reference to future estates. Again, it is probable from all the dispositions of the codicil that this trust for the benefit of the plaintiff was with a view to her actual support in case Mrs. Langdon should not see fit to execute the power of appointment. This object would require an

estate in possession.   3.  The last consideration is somewhat strengthened by the fact that the executors take no estate under the second clause in the gifts embraced in it.   If we assume that the devise in trust looked to the immediate maintenance of the plaintiff it would be applied to estates in possession, but omitted where future estates were dealt with.   4.  If the first clause is applied to remainders which vested in interest in the plaintiff at the testator's death, but not in possession until the termination of a life estate, it will create limitations not allowed by law.   This is actually done by the judgment, in regard to the estate on Fourteenth-street, on which three life estates are limited.   Thus, J. J. Astor and Mrs. Langdon are entitled to life estates; then, in one-half, the executors take an estate in trust for the life of the plaintiff with a remainder to her issue.   On the execution of the power of appointment the same thing happens as to one-half of the residue.   5.  The legacies of plate, sums of debt and deposit, and stocks, in the first clause of the will, the devise of the house and lot on La Fayette Place in the same clause, and the devise of the property on Fourteenth-street by the first clause of the second codicil, fall within the precise language of the second clause of the sixth codicil, being estates, rights and interests ·in lands and personalty to which the plaintiff "would have been entitled [by the prior provisions] after the death of. her mother."   To withdraw them from the operation of that clause, so exactly descriptive of their character, and to subject them to the prescriptions of the first clause by the application of a recondite rule of law, would violate well-settled rules of interpretation.   The language used in the codicil is not technical, but popular.   "Given at my decease" and "entitled after the death of her mother" are expressions to which the law has not affixed a determinate meaning as distinguished from their popular sense. They are not words of art, requiring a resort to technical rules for their interpretation, but words of general descrip-

tion, and to be construed by the application of sound judgment to the various provisions of which they form a part. The language of the second codicil is nearly the same with that used in the primary gifts to the plaintiff on the death of her mother. The presumption is that in both instances they are used in the same sense. 6. There is enough in the sixth codicil to show a general intention to affect all the former testamentary provisions in favor of the plaintiff. By providing for all the devises of land, given on the testator's decease, and for all gifts of land and personalty which the plaintiff would be entitled to after the death of her mother, brothers and sisters, and giving to the language its natural signification, all the prior gifts would be embraced, except the two legacies of $25,000 each and a share of the water stock, which were to take effect, not necessarily on either of these events, but on the plaintiff's attaining a certain age. These gifts, as they did not fall within the prior descriptions, were accordingly made the subject of the third clause, and thus all the gifts to the plaintiff were embraced in some branch of the codicil. A construction which should leave untouched a share in the large property given to the plaintiff on the death of her mother by the first clause of the will, would be hostile to the general intention apparent from the codicil. The motive which dictated the changes which the court below concede to have been made would not have left in their full force the legacies last referred to.

I think the court below fell into an error in the manner of giving effect to the deed of appointment. It is unnecessary to consider what effect the codicil would have wrought upon the prior testamentary provisions, if the power of appointment had been invalid, or incapable from any cause of execution; for we are of opinion that it is quite valid and effectual. Nor do we find any difficulty to arise out of the circumstance that the power is limited "to any part not exceeding in value one-half of the real and personal

estate " taken from the plaintiff. As the gifts over to others of the property taken from her were to different descendants of the testator, it could not have been his intention that the half or lesser share which might be restored by the power should come out of any portion less than the whole of that which had been taken from the plaintiff or in unequal proportions. Such a construction would enable the donee of the power to discriminate among the parties taking portions of the share of the plaintiff in a manner which we cannot suppose the testator could have contemplated. He unquestionably intended to place the plaintiff to a certain extent in the power of her mother; but there is no reason to believe that he designed to clothe the mother with any such authority over the shares of any other of his devisees or legatees. Now we suppose an undivided half of a particular item of property is one-half in value of the same property, and so of any other aliquot share. When, therefore, the testator authorized Mrs. Langdon to appoint and give to the plaintiff and her issue " any part not exceeding in value one-half of the real and personal estate " taken from the plaintiff, we suppose he committed to her discretion the question whether she would restore anything, and if she did, whether it should be one-half or one-quarter, or any other part not exceeding one-half; and that he intended it should be an aliquot share of what had been taken away by the codicil. There is nothing in the language of the power looking to any other method of executing it; many of the primary gifts had been made in that way, and in the codicil itself the same course is pursued in carving out the trust estate devised to the executors. But if the power would admit of another method of getting at the one-half in value, at least it does not forbid its being taken by aliquot parts. The deed of appointment actually executed, gives to the plaintiff all that the trustee of the power was authorized to give, without attempting any specification of particular parcels of property; and I know of no method

of giving it effect, but by holding that it operates upon fractional parts and conveys· the largest undivided share that the trustee was authorized to appoint in each parcel of property taken from the plaintiff.

The error which we suppose the court to have committed in applying the power, is in giving to the plaintiff only a life estate, with the ultimate· title to her issue, in property which was by the primary provisions given to her absolutely or in fee. For instance, the testator gave her absolutely one-sixth of $100,000 of city stock called water stock. The court below held that the power was applicable to this property, but that it must be and was so executed as to convey to her only the income of the stocks for life, and that at her death her issue were entitled to it in full property. The same disposition is made of the two legacies which were given in such property on her attaining the requisite age.

The lot on the westerly side of La Fayette Place which was devised to the plaintiff in fee by the fifth codicil, and which by the sixth is taken from ·her and given to Mrs. de Nottbeck, is held to be subject to the power of appointment as to one-half; and as to that half it is held that the plaintiff under the deed of appointment takes an estate for life with remainder to her issue born and unborn. The original provisions never contemplated successive estates in this lot or these legacies in the plaintiff and her issue. The inquiry now is, whether by a proper construction of the fifth clause of the codicil she was to have a different or less estate in the part which her mother might restore to her by the execution of the power. The power is "to appoint and give to the said Louisa and her issue, or to her or their use, any part not exceeding in value one-half of the real or personal estate by this codicil taken from Louisa and given to others." The argument in favor of the judgment of course turns upon the effect of the words "and her issue." But it must be recollected that a large portion of the

property within the scope of the power was devised to the plaintiff for life with remainder to her issue. The words referred to will not fail to have an effect, therefore, though they are not applied to this subject. The power does not say that the plaintiff shall take a life estate or that her issue shall take in remainder. If the language were construed literally the plaintiff and her children would take *per capita*, which would be preposterous. Nor does the clause state that the issue who are to take under the execution of the power are those who shall survive the plaintiff at the time of her death, according to the careful phraseology of the primary devises, and which is kept up in the first clause in the limitation of a future estate in the share devised to the executors in trust. Again, the power in terms embraces only " the real and personal estate taken from Louisa," yet it is quite clear that the *corpus* of the property was intended, else naming the issue as appointees would be inconsistent and absurd. I think, moreover, that the power looks to a restoration instead of a fresh scheme of limitations. This is apparent from comparing the vague and indeterminate manner in which the plaintiff's issue is mentioned with the careful phraseology which is used throughout the will and in all the codicils, including that under consideration, where a future estate is intended to be limited. It should be remembered too that the whole codicil is framed upon the plan of adjusting its provisions to the prior gifts by way of brief reference and allusion, without repetition or circumlocution. Thus, the devises over to the other brothers and sisters in the first and second clauses are to them and their issue as an increase of their shares, instead of a formal statement of words of limitation ; but where new limitations are created, as in the latter part of the third clause, in regard to the water stock, and in the seventh clause in respect to the estate near Geneva, the former precise language is again resorted to.

These considerations have led me to the confident conclusion that the power of appointment does not provide for any new limitations to the plaintiff's issue; that where the primary gifts gave the ultimate estate to the plaintiff, she takes a like estate in that part of the same property which is given to her by the instrument of appointment, and that where by the prior gifts the issue would have been entitled to future estates, they take like future estates in the same property under the deed of appointment. The first, fourth and fifth divisions of the judgment should therefore be modified so as to give the plaintiff an estate in fee simple in the lot on the westerly side of La Fayette Place, being lot number four; and so as to give to her as her own property one-twelfth part of the $100,000 of water stock and one-half the two legacies of $25,000 each on her attaining the age to entitle her to them by the primary bequests.

The sixth division of the judgment relates to the lot on La Fayette Place, devised by the first clause of the will, and the house and lot on Fourteenth-street mentioned in the first clause of the second codicil. Both the errors which we suppose to have occurred enter into the disposition which the court below has made of these lots. An estate in remainder after the death of Mrs. Langdon, and in trust, is declared to be vested in the executors, as to one-half of what would have been the plaintiff's share, for the plaintiff's life, and half of the other half is given to the plaintiff for life, and then the three-fourths are given to her issue, though by the primary devises the plaintiff took a vested remainder in fee. This part of the judgment should be modified by leaving out what is said respecting a trust estate in the executors, and changing the aliquot parts mentioned in the latter part of the clause, so that they will represent one-half of the share the plaintiff would have taken by the original devises; and it should be further modified so as to give the remainder to the plaintiff in fee, declaring however that in the event of her dying in the lifetime of her mother,

leaving issue, such issue are to take the remainders in her place.

To finish the changes in the judgment which the foregoing conclusions will require to be made, the fourth division of the judgment, which denies to the sixth codicil any operation upon certain pecuniary legacies, should be stricken out; and instead of it, the judgment should declare the effect of the original bequests, as stated by the court below; that by the operation of the sixth codicil, one-half of the amount which the plaintiff would have been entitled to upon the death of her mother, will, in that event, go to her brothers and sisters, who may survive Mrs. Langdon, or to the issue of such of them as may die before that event; and that the other half of her share of the plate, sums of deposit and debt and stocks mentioned in the first clause of the will, on the death of Mrs. L. will vest in possession in the plaintiff in absolute property, or in her issue should she die before Mrs. Langdon, leaving issue; and her share of the other half of the water stock will, on the death of Mrs. Langdon, vest in the plaintiff in absolute property, subject to be divested should she die under that age without surviving issue.    The share of the plaintiff in the furniture in the house on Fourteenth-street is to be disposed of in the same manner, the plaintiff taking, on the death of J. J. Astor and her mother, one-half of the share she would have had if the original provisions had not been changed.

In other respects, we think the judgment of the superior court was correct.  1. It will be seen that we assume that the power of appointment operated upon the two legacies of $25,000 each, bequeathed to the plaintiff by the third clause of the will.  The point is not entirely free from doubt.  It may be that the testator, in declaring that he revoked the two legacies entirely, intended them and the money which they represented to be considered as annihilated, in interpreting the other provisions of the codicil, and there is certainly probability in the idea that the expression in the

fifth clause, " by *this codicil* taken from Louisa and given to others," limits the power to cases of gifts taken from the plaintiff and expressly given to others by the codicil. But upon the whole, we think the other the safest construction. These legacies fall precisely within the terms of the power. They were taken from the plaintiff. They were likewise given to others ; for nothing can be clearer than that the residuary legatees would be entitled to them in consequence of the revocation, and that by the gift of the testator. All this, too, is effected by the codicil. The revocation *ex vi termini* took them from the plaintiff and gave them to the residuary legatees. The other view is founded upon conjecture, and, however probable, it is not a safe basis of interpretation.

It is insisted on the part of the counsel for Mrs. de Nottbeck that the power of appointment is not applicable to the lot on La Fayette Place devised in fee to the plaintiff, and by the sixth codicil given by substitution to Mrs. de Nottbeck, then Cecilia Langdon. This provision belonged to the class of primary gifts, so far as the time of its taking effect was concerned, which are dealt with in the first clause of the codicil, but it differed from those devises in the circumstance that the entirety was given to the plaintiff, instead of a share in common with her brothers and sisters. It could not therefore be embraced in the first clause, where the substituted devises are to the other children of Mrs. Langdon having shares in the same property. Hence it was excepted from the operation of that clause, and made the subject of a separate provision. The power of appointment follows that provision ; and by its terms is applicable to half of all the real and personal estate by the codicil taken from the plaintiff and given to others. The substituted devise falls precisely within the language of the power, and I am unable to perceive any evidence of an intention in the testator to exclude it from its operation. It is true, as suggested on behalf of Mrs. de Nottbeck, that the original devise looked to an undivided enjoyment of the lot

as the site of a dwelling-house, and the manner in which the substitution is effected, leaves the conditions in that respect in force; but the testator must have known that the power of appointment might be left unexecuted, and in that event the condition as to the manner of building would be binding upon the substituted devisee, and the testator's intentions in that respect would be carried out. The power, however, was thought of sufficient importance to override these considerations, and being universal in its scope, and being, moreover, the last announcement of the testator's will, it must prevail, though the intention of the testator in one particular should be disappointed.

Having come to the foregoing conclusions as to the construction of the codicil, it is obvious that I think it valid, and effectual to accomplish the purposes for which I have supposed it was intended. It is not to be disregarded because there are difficulties touching its construction, or because judges disagree on some points respecting its operation. The court is bound to apply itself with diligence and attention to find the meaning of the testator if it can possibly be ascertained, however difficult or obscure; and it is only after every effort to find that meaning has proved fruitless, and it has been found impossible to solve the difficulty and dispel the obscurity, that the provision is to be rejected as wholly unavailing. The difficulties which this codicil presents appear to me to arise mainly from the effort to compress within a few brief words of reference a great many different subjects. The full and clear exposition of the testator's views perhaps required more circumlocution. Still, it has not seemed to me difficult to arrive at reasonably satisfactory conclusions. I find no difficulty for instance in holding that the substituted devises in the first clause of the sixth codicil are of the *corpus* of the property to which it relates, and not of limited estates in that property; and that when it speaks of all such shares, estates and interests as are given to Louisa or her issue on his decease, it means

the fee simple of the aliquot shares in each piece of property which by the prior provisions he had devoted to the immediate benefit of the plaintiff, and in respect to which he had provided for the succession of her issue. I think the true reading of the clause is this : "As to all such shares, estates and interests in land," &c., "I give one-half *of said land* to the other children of my daughter Dorothea," &c. The other provisions, to wit, the trust estate in the executors, with the subsequent limitations of that share, the devise to the other children of Mrs. Langdon, and the power of appointment, each call for the entire interest in the land. The substituted devise to the other children of Mrs. Langdon requires a fee, by force of the words " to be taken and held as an increase of the shares or sums given to them and their issue in the same property." The children and their issue together took a fee in their primary shares ; and an increase of the shares of themselves and their issue would require a like estate in fee. It is obvious that the substituted devises are limited as to each parcel of land to the children who took shares in the same parcel under the original devises. Again, the power to give one-half of what was taken away from the plaintiff to the other children of Mrs. Langdon, clearly does not embrace any part of the half given in trust to the executors. The latter was not in any ordinary sense taken from the plaintiff. Although a legal estate was vested in the executors for her life, the object of that part of the arrangement was to secure to her the beneficial interest and to give the estate ultimately to her issue, who would have been entitled under the primary devises.

I agree with the court below that the contingent estates to arise in favor of Mrs. Kane or her issue in the property given to Mr. Bristed are not affected by the sixth codicil. The first clause does not apply, because the estates are not given upon the testator's death ; and they are not within

the second clause, because that is limited to estates and interests to which the plaintiff or her issue would be entitled after the death of her mother, brothers and sisters, whereas these gifts were to take effect upon the death of Mr. Bristed, which might happen in the lifetime of those relatives.

I am also satisfied with the disposition made in the court below of the income, during the lifetime of Mrs. Langdon, of that share of the water stock affected by the power of appointment. By the execution of the power without reservation, I think Mrs. Langdon must be held to have transferred her life interest in the income in the share conveyed by the deed of appointment. She was competent to transfer it without regard to the power, and I am of opinion that the language of the deed is sufficiently comprehensive to pass that right.

I assent to the position that the execution of the power should not be taken to create ulterior limitations on failure of issue of the plaintiff; and to the quality of the remainders which her issue take as determined by the judgment in the court below. I have some doubt whether the limitations in the primary devises and bequests ought not to have been strictly followed in respect to the shares restored by the deed of appointment. The point is not practically very important, and I do not feel sufficiently confident that the judgment in this respect is wrong, to wish to disturb its provisions.

The judgment of the court below must be modified in the particulars which have been mentioned; but as De Nottbeck and wife have alone appealed from the portions of the judgment which we have thought more favorable to Mrs. Kane than they ought to have been, they only, or rather Mrs. De Nottbeck, are entitled to the advantage of the change. Should the parties fail to agree upon the settlement of the decree of this court, it must be settled before one of the judges.

All the judges except MORSE, J., who was not present, concurred in the above conclusions.

Ordered accordingly.