ROBERT L. CUTTING, Appellant and Respondent, *v.* WALTER L. CUTTING et al., Appellants and Respondents.

The rule of the common law that where a person has a general power of appointment by will over property, and has exercised the power, the property forms a part of his assets and is subject to the claims of creditors, and that too in preference to those of a legatee, or of the gratuitous appointee, was abrogated by the provision of the Revised Statutes (1 R. S. 732, § 73) abolishing powers as then existing by law, and declaring that their creation should be thereafter governed by the provisions of the article "of powers." It was the legislative intent to make that article a complete and exclusive code on the subject.

The said article includes, and is applicable as well to powers concerning personalty as to those affecting real estate.

The will of G. gave certain estate, real and personal, to her executor, in trust, to take the rents and profits during the life of F., her son, and apply them to his use, and upon. his decease to make over the body of the estate to whomever he by his will appointed to receive it. F. made an appointment as prescribed. *Held,* that the will created a valid general and beneficial power within the provisions of the Revised Statutes (1 R. S. 732, §§ 74 *et seq.*); and that the estate was not chargeable after the death of F. with a judgment obtained against him in his life-time.

*Cutting* v. *Cutting* (20 Hun, 360), reversed in part.

(Argued June 9, 1881 ; decided October 28, 1881.)

APPEAL from judgment of the General Term of the Supreme Court, in the first judicial department, entered upon an order made at the March term, 1880, which modified a judgment in favor of plaintiff, entered upon an order overruling demurrers to the complaint herein. (Reported below, 20 Hun, 360.)

The nature of the action and the material allegations of the complaint are set forth in the opinion.

*Henry H. Anderson* for plaintiff. The power of appointment created by the will of Gertrude Cutting is a general beneficial power, and is valid, and there was a valid exercise thereof under the Revised Statutes. (1 R. S. 732, §§ 77, 79–80; *Harrison* v. *Cutting*, 13 Daily Reg., No. 127; *Freeborn* v. *Wagner*, 49 Barb. 43; 4 Keyes, 27; *Tallmadge* v. *Sill*, 21 Barb. 34, 52; *Jennings* v. *Conboy*, 73 N. Y. 230; *Root* v. *Stuyvesant*, 16 Wend. 271; *Livingston* v. *Murray*, 68 N. Y. 485.) Where there is a general power of appointment and it is exercised, the property which is the subject of the appointment becomes equitable assets for the payment of the debts of the grantee of the power, and this applies to both real and personal property. (*Tallmadge* v. *Sill*, 21 Barb. 34; *Johnson* v. *Cushing*, 15 N. H. 298; *Ashfield* v. *Ashfield*, 2 Vern. 287; *Thompson* v. *Town* Prec. Ch. 52; *Lessels* v. *Cornwallis*, 2 Vern. 465; *Bainton* v. *Ward*, 2 Atk. 172; *Townsend* v. *Windham*, 2 Ves. Sr. 1; *George* v. *Milbank*, 9 Ves. 189; *Jenney* v. *Andrews*, 6 Mad. 264; *Atty.-Gen.* v. *Shaff*, 2 Cromp. & Mees. 124; *Petre* v. *Petre*, 14 Beav. 197; *Williams* v. *Lomas*, 16 id. 1; *Fleming* v. *Buchanan*, 3 DeGex, M. & G. 667; *Edie* v. *Babbington*, 3 Ir. Ch. 568; Chance on Powers, § 1817; 2 Sugden on Powers, § 27; 4 Kent's Com. 339.) The provisions of the Revised Statutes on the subject of powers are not in conflict with the established rule of equity which sustains the plaintiff's claims. (1 R. S. 732, §§ 81–85; *Johnes* v. *Johnes*, 3 Dow. 15; *Heydon's Case*, 3 Rep. 7; *Rex* v. *Inhabitants of Cumberland*, 6 Term. R. 194; *Lyde* v. *Bernard*, 1 M. & W. 113; *Gillett* v. *Moody*, 3 N. Y. 79; 2 Coke's Inst. 572; Chitty's Black. Com., note to p. 86; Potter's Dwarris on Statutes, 73, 144,

184, 231, 238, 239.) The old rule of equity with reference to general powers of appointment by will is within the policy of the statute, and the statute nowhere abrogates this rule. (5 Edm. [2d ed.] 585 ; 2 R. S. 732; §§ 81–85 ; revisers' notes, 4 Edm. Stats. at Large [2d ed.], 586.) The rule established by equity being consonant with the spirit of the statute, the statute, using only affirmative words, has not cut off the remedy which the rule had created. (*Rex* v. *Cunningham*, 5 East, 478 ; Potter's Dwarris on Statutes, 68, 72, 185, 219, 221; Pomeroy's Municipal Law, §§ 43, 229 ; *Wetmore* v. *Tracey*, 14 Wend. 225 ; *Jackson* v. *Bradt*, 2 Caines, 169 ; Coke upon Littleton, Butler and Hargrave's Notes, 115, note 8; 2 Inst. 200 ; revisers' notes, 5 Edm. Stats. at Large [2d ed.], 585.) To construe the statute to overthrow the rule of equity is to revive, in the case where an effectual remedy existed, the mischief which it is the object of the statute to suppress. (3 Rep. 7; 3 N. Y. 487; *Salters* v. *Tobias*, 3 Paige, 338.) The Revised Statutes, as regard powers, relate only to estates in land ; they in no way affect the law which makes personal property equitable assets for creditors. (1 R. S. 732, § 74 ; *Kane* v. *Gott*, 24 Wend. 661; *Gillman* v. *Reddington*, 24 N. Y. 12 ; *Cruger* v. *Cruger*, 5 Barb. 239.)

*William E. Sill, A. J. Vanderpoel and John N. Whiting*, by leave of court, submitted brief in another case involving same question.

The power of appointment conferred upon Fulton Cutting by his mother's will is a beneficial power. (*Freeborn* v. *Wagner*, 4 Keyes, 27 ; *Tallmadge* v. *Sill*, 21 Barb. 34 ; 1 R. S. 733, § 84 ; *In re Powell's Trust*, 39 L. J. Ch. 188; *Johnson* v. *Hubbell*, 5 Am. Law Reg. 177 ; *Rivere* v. *Rivere*, 3 Dessaus. 195 ; *Jones* v. *Martin*, 3 Ambler, 882; *Podmore* v. *Gurnsey*, 7 Simons, 644–654; *Stephens* v. *Raynolds*, 6 N. Y. 454; *Pursell* v. *Stryker*, 41 id. 480, 487 ; *Jackson* v. *Edwards*, 7 Paige, 386 ; 22 Wend. 509 ; *Jennings* v. *Conboy*, 73 N. Y. 230.) The power conferred upon Fulton Cutting is an authorized and valid power, and not obnoxious to either section 73 or

section 92 of the chapter on powers in the Revised Statutes. (*Root* v. *Stuyvesant*, 16 Wend. 271; Maxwell on Interpretation of Statutes, 15; Potter's Dwarris on Statutes, 110; *Wright* v. *Talmadge*, 15 N. Y. 313; *Jackson* v. *Edwards*, 7 Paige, 400; *Quin* v. *Skinner*, 49 Barb. 125; 1 R. S. 732, §§ 77, 92, 94; *Livingston* v. *Murray*, 68 N. Y. 485.) There is no distinction in principle, nor is any drawn in the books between a power to devise the fee directly, and a power to designate the parties to whom the trustees, at the death of the grantee of the power, shall convey the realty and deliver over the personalty. (*Hotchkiss* v. *Elting*, 36 Barb. 46.) The power of appointment having been executed by Fulton Cutting, the property embraced therein became assets for the payment of creditors. (*Talmadge* v. *Sill*, 21 Barb. 51; 4 Kent's Com. 339; 2 Sugden on Powers, § 277; Chance on Powers, § 1817; 2 Vern. 287, 319, 465; 1 Atk. 465; 6 Mad. 264; 2 Cromp. & Mees. 124; *Johnson* v. *Cushing*, 15 N. H. 313; *Townshend* v. *Windham*, 2 Ves. Sr. 2; 2. Roll. Rep. 173; *Fleming* v. *Buchanan*, 3 De G., M. & G. 976; *Att'y-Gen'l* v. *Staff*, 2 C. & M. 124; *Palmer* v. *Whitmore*, 2 C. & M. [in note] 131; *Jenney* v. *Andrews*, 6 Maddock, 264; *Vaughan* v. *Vanderstegen*, 2 Drew. 165, 176, 363; *Shattock* v. *Shattock*, L. R., 2 Eq. 187; *Thomson* v. *Towne*, 2 Vern. 318; *Petre* v. *Petre*, 14 Beav. 197; *Nail* v. *Punter*, 6 Sim. 502.) Independent of the question as to the rights of creditors, in respect of real estate passing under Mrs. Cutting's will, and still remaining unsold, the personal property left by her, and the proceeds of real estate since sold, must be assets for creditors upon the execution of the power by Fulton Cutting. (1 R. S. 732, §§ 1, 2; *Blanchard* v. *Blanchard*, 4 Hun, 290; affirmed, 70 N. Y. 615; *Gott* v. *Cook*, 7 Paige, 535; 1 R. S. 761, tit. 4; *Manice* v. *Manice*, 43 N. Y. 382; *Kane* v. *Gott*, 24 Wend. 661; *Gilman* v. *Reddington*, 24 N. Y. 12; *Cruger* v. *Cruger*, 5 Barb. 239; *Hallett* v. *Thompson*, 5 Paige, 583; *Graff* v. *Bonnett*, 31 N. Y. 9; *Grout* v. *Van Schoonhoven*, 1 Sandf. Ch. 336; *Hone* v. *Van Schaick*, 7 Paige, 521; *Clute* v. *Bool*, 8 id. 82; *Degraw* v. *Clason*, 11 id. 136; *Campbell* v. *Foster*, 35 N. Y. 361; *Williams* v. *Thorn*,

70 id. 278.) The personal property applicable to the claims of creditors includes the proceeds of real estate sold since the death of Mrs. Cutting. (1 Jarman on Wills, 568; *Brown* v. *Bigg*, 7 Ves. 279; *White* v. *Howard*, 46 N. Y. 161, 162; *Lawes* v. *Bennett*, 1 Cox, 167; *In re Vandervoort*, 1 Redf. 273; *Waller* v. *Maunde*, 19 Ves. 423; *Cole* v. *Wade*, 16 id. ; *Drake* v. *Pell*, 3 Edw. Ch. 251; *Bourne* v. *Bourne*, 2 Nare. 33; Dalzell on Conversion, 89.) The codicil in favor of Mrs. Reubell was a valid execution of the power of appointment. (2 Washburn on Real Property [4th ed.], 658; Sugden on Powers [8th ed.], chap. 7, § 7, p. 289; 4 Kent, 334, 335; *Crane* v. *The Lessee of Morris and Astor*, 6 Pet. [U. S.] 285; *White* v. *Hicks*, 33 N. Y. 383; *Wilday* v. *Barnet*, L. R., 6 Eq. 193; *In re Wilkinson*, L. R., 4 Ch. App. 587; *Amory* v. *Meredith*, 7 Allen, 397, 400; *Willard* v. *Ware*, 10 id. 266; *Bangs* v. *Smith*, 98 Mass. 270; *Van Wert* v. *Benedict*, 1 Bradf. 122; 1 R. S. 737, § 126; *Bolton* v. *De Peyster*, 25 Barb. 576.)

*S. P. Nash* for defendants, William Bayard Cutting and Robert Fulton Cutting. During Fulton Cutting's life-time the creditors had no rights in respect to the principal of the property. (1 R. S. 729, § 60; id. 730, § 63; *Williams* v. *Thorn*, 70 N. Y. 270.) The power of appointment conferred upon Fulton Cutting did not give him such a dominion over the estate as to subject it to the claims of his creditors. (1 R. S. 732, § 86.) The English rule that where the donee has a general power of appointment and executes it, creditors are let in, has been entirely obliterated by the Revised Statutes. (1 Story's Eq., § 176, n. 3; 4 Kent's Com. 341–342; revisers' notes to part 2, chap. 1, tit. 2, art. 3.) The statute of powers applies to personal property. (1 R. S. 773; id. 732 § 74; 2 Washb. Real Prop. 30; 4 Kent's Com. 334; *Williams* v. *Thorn*, 70 N. Y. 270; *Graft* v. *Bonnett*, 31 id. 9, 13.) Not every legal doctrine that prevailed in England in a more or less vague and unsettled condition became the law of the colonies, but only such rules as were applicable to the condition of the colonists (*Meyers* v. *Gemmel*, 10 Barb. 537; *Jackson* v. *Bron-*

*son,* 7 Johns. 227; *People* v. *Canal Appraisers,* 33 N. Y. 461; *Holmes* v. *Mead,* 52 id. 332; *Jennings* v. *Conboy,* 73 id. 230.) If under the Revised Statutes the power in Fulton Cutting did not subject the property at law and directly in his lifetime to the claims of his, creditors, there is no right part in equity.(*Parsell* v. *Stryker,* 41 N. Y. 480; *Reid* v. *Shergold,* 10 Ves. 370, 379; *Moore* v. *Dimond,* 5 R. I. 121; *Portland* v. *Topham,* 11 Hoffm. L. C. 32, 556.) The power in question is a trust power, not a beneficial power. (1 R. S. 732, §§ 92, 87, 90; 4 Kent's Com. 74; *Root* v. *Stuyvesant,* 18 Wend. 257; *Jennings* v. *Conboy,* 73 N. Y. 230.)

*Samuel Hand* for defendants Walter L. Cutting and Anne F. Reubell. All existing powers were abolished by the Revised Statutes, and the creation, construction and execution of powers were thenceforth to be exclusively governed by the statute. (1 R. S. 732, § 73.) By giving to Fulton Cutting a power of testamentary appointment to change the beneficiaries who were to take at his decease, his mother, the testatrix, made him her mere instrument for that purpose, and he could appoint no other or greater estate than she could have created. His appointees must take as purchasers from her and not from him. (*Bramhall* v. *Ferris,* 4 Kern. 41; *Hall* v. *Williams,* 120 Mass. 344.) The power given to Fulton Cutting by the will of his mother is clearly not one of the powers enumerated in the Revised Statutes as beneficial to his creditors or to the purchasers from him. (Revisers' notes, 5 [R. S. Edmunds'· ed.], 327; 1 Story's Eq. Jur., § 176, note; *Comm.* v. *Duffield,* 12 Penn. 279; *Jennings* v. *Conboy,* 73 N. Y. 230.) The provisions of the Revised Statutes as to powers relate both to real and personal estate. (1 R. S., § 2, p. 773; *Kane* v. *Gott,* 7 Paige, 534; 24 Wend. 641; *Graff* v. *Bennett,* 31 N. Y. 9; *Blanchard* v. *Blanchard,* 4 Hun, 290; *Campbell* v. *Foster,* 35 N. Y. 361, 370, 371; *De Graw* v. *Clason,* 11 Paige, 136; *Hallett* v. *Thompson,* 5 id. 584.) The Supreme Court, sitting as a court of equity, had no jurisdiction to direct the application of the personal property to the payment of the plaintiff's

debt. (2 R. S. 173, §§ 38, 39; *Bramhall* v. *Ferris*, 4 Kern.
41; *Campbell* v. *Foster*, 35 N. Y. 361.) The exercise of the
power of appointment did not create a fund creditors could
levy upon, either as to the real or personal property. (1 Story's
Eq. Jur., § 176, note [3d ed.], p. 194; *Comm.* v. *Duffield*,
12 Penn. 279; *Townsend* v. *Windham*, 1 Ves. 8; *Harring-
ton* v. *Hale*, 1 Cox, 133; *Prize* v. *Goodwin*, Freeman's Ch.
Cas. 265.) The act disposing of the property must be one which
the "owner granting" the power (not the person exercising
it) "might himself lawfully perform," and the appointees or
beneficiaries are purchasers from her and from her only. (1 R.
S. 732, § 74; *Blagge* v. *Mills*, 1 Story's C. C. 445; *Reid*
v. *Shergold*, 10 Ves. 370.) The statute requires for a bene-
ficial power the interest to be in the donee and in none other.
(*Jennings* v. *Conboy*, 73 N. Y. 230; Sugden on Powers, chap.
1, § 4; *Manice* v. *Manice*, 43 N. Y. 364.)

FOLGER, Ch. J. This is a suit in equity, seeking to charge
a debt owned by the plaintiff, against the estate of Fulton Cut-
ting, deceased, upon certain estate, made up of real and per-
sonal property. The estate sought to be charged was owned,
in her life-time, by Mrs. Gertrude Cutting, the mother of Ful-
ton Cutting. She made a will, and died; by which will she
gave that estate to executors, in trust, to take the rents and
profits during his life, and apply them to his use; and upon
his decease, to make over the body of the estate to whomso-
ever he should by his will appoint to receive it. He made a
will, and a codicil to it, and died; having appointed by that
will, that that estate should be made over to Walter L. Cutting,
in trust for two sons of him, the testator, and by that codicil,
having given to his sister all the interest which he had or
might have in the estate of his mother. Neither Walter L.
Cutting, nor the two sons, nor the sister, appear from the case
to have been creditors of the testator, but volunteers. The
plaintiff is a creditor of the testator, by judgment got against
him in his life-time. It is that judgment debt that it is sought
to have charged. The plaintiff relies, therefor, upon a rule of

equity, which he claims to be, that where a person has a general power of appointment by will over property, and has exercised the power, the property thus appointed forms a part of his assets, and is subject to the claims of creditors; and that, too, in preference to those of a legatee or of the gratuitous appointee. The text-books state the rule to be, as it is claimed by the plaintiff. 4 Kent, *339 ; 2 Sugden on Powers, *29, § 7; id. *173, § 2 ; Ram on Assets, *148–9 ; 2 Williams on Ex'rs, *1435; Chance on Powers, § 1817 ; and the decisions cited in them, amply uphold the statement they make.

The defendants deny that this is the rule in this State, and insist that though it may have been at some time, and may be yet, the rule in England, it has never been adopted as the rule here. They concede that such part of the common law of England as was the law of the colony of New York on the 19th day of April, A. D. 1775, continued to be the law of the State of New York, unless altered by the legislature thereof; as indeed they must. (Const. of 1777, § 35 ; Const. of 1821, art. 7, § 13 ; Const. of 1846, art. 1, § 17.) And the common law of England was the law of the colony at that date, so far as it was applicable to the circumstances of the colonists. (*Bogardus* v. *Trinity Church,* 4 Paige, 178, 198 ; *Myers* v. *Gemmel,* 10 Barb. 537, 541.) And it has since continued so to be, when conformable to our institutions, unless it was established by an English statute which has been abrogated, or was rejected in colonial jurisprudence, or has been abolished by our legislation. ( *Williams* v. *Williams,* 8 N. Y. 525, 541 ; *Perry* v. *Perry,* 2 Paige, 501 ; *Griffin* v. *Griffin,* 47 N. Y. 134; *Brinkley* v. *Brinkley,* 50 id. 184,190.) We confess that we see not why the rule is not as conformable to our institutions as to those of England. The objections that have been at times made to it have been general, based rather upon the abstract hardship and arbitrary nature of it (*In re Harvey's Estate,* L. R., 13 Ch. Div. 216) than upon its inaptitude to the institutions of a peculiar people; and the remark of EARL, J., in *Jennings* v. *Conboy* (73 N. Y. 230, 233), while directed against the whole law of powers, as it had grown up in England, ab-

struse, intricate, and full of nice distinctions, concedes that it was the rule in this State, and that there was needed legislative interposition to root it out.  We think too that it is clearly indicated in the revisers' notes to the Revised Statutes, and in the action of the legislature that adopted the article " of powers ". of their framing, that it was then conceded that the English rule was the law of this State at that time.  And we need not now go farther in that inquiry, for we have come to a conclusion, based upon the Revised Statutes, that the English rule has been abrogated by our legislature, and that the plaintiff cannot maintain his position.

All of the facts in this case arose since the adoption of the Revised Statutes, and the solution of the legal questions presented by those facts must be made by the application to them of the provisions of article 3, title 2, chapter 1, part 2 of those statutes, entitled, " of Powers."  Thereby, powers, as they then existed by law, were abolished ; and thenceforth, the creation, construction, and execution of powers were to be governed by those provisions.  (1 R. S. 732, § 73.)  It is not denied that, if the will of Mrs. Cutting created a valid power, it has been well executed by the testamentary disposition made by Fulton Cutting ; so that what we have to determine is this :  Did her will create a valid power, and if it did, what sort of a power is it, and how shall that power be construed ?

The will of Mrs. Cutting gave to Fulton Cutting the authority to direct and appoint by his will to whom, upon his decease, certain property should be assigned and conveyed by the trustees named in her will, and who had the legal estate in it.  This was an authority to do an act in relation to lands, or the creation of an estate therein, which Mrs. Cutting herself might, so far as appears, have lawfully performed ; and so, the authority thus given falls within the primary definition of a power, made in the Revised Statutes.  (Id., § 74 ; and see *Kane* v. *Astor's Executors*, 9 N. Y. 113, 132.)  It was given " by a devise contained in a last will and testament ; " and so it is granted in manner and form as called for by the Revised Statutes.  (1 R. S. 735, § 106.)  Proceeding further, we find

that the authority given is what the statutes call a general power, for it authorizes the alienation in fee of the lands embraced in it, to any alienee whatever, and is thus directly within the language and intent of section 77, and without that of section 78, which defines what is a special power. (*Jennings* v. *Conboy*, 73 N. Y. 230.) We may next inquire, whether the authority given created a beneficial power. The language of section 79, applicable to this case, is this: "A general  *  *  power is beneficial, when no person other than the grantee has, by the terms of its creation, any interest in its execution." It is certain that no person other than Fulton Cutting had, by reason of the words of Mrs. Cutting's will that gave him authority, an interest that he should execute that authority. Thereby, the literal force of the section is met and satisfied. But the defendants contend that there is an implication that should be made; and that not only is there a negative expressed in the language, but an affirmative also, to be implied; that while to make a power beneficial, no one other than the grantee of it can, by the terms of its creation, have an interest in the execution of it; yet it must also appear affirmatively by those terms that the grantee of the power has an interest in that execution. If this is granted, they farther contend that a power to appoint by will is such that the grantee has no interest in the execution of it. There are decisions in this State adverse to the contention. They hold that a power to dispose of by will is a beneficial power. (*Freeborn* v. *Wagner*, 49 Barb. 43; *S. C.* on appeal, 4 Keyes, 27; *Jennings* v. *Conboy*, *supra.*) Indeed, the revisers and the legislature in this very act "of Powers," have given an interpretation of the words "beneficial power," so far as to show that a power only to devise may be a beneficial power. In section 84 they say : "Where a general and beneficial power to devise the inheritance shall be given," etc. This language requires that the power there spoken of shall be both general and beneficial. And it thus declares that a power to devise only may be general and at the same time beneficial. And as it cannot be a general power, without giving authority to alien

in fee, to any alienee whatever (§ 77), it follows that a power to devise to any one whomsoever, when it is not a power in trust (§ 94), is a beneficial power. And so the section last cited (§ 94) serves to interpret the meaning of the phrase " is beneficial," in section 79. That section (§ 94) declares, when a general power, such as we have shown this to Fulton Cutting to be, is in trust. It is in trust when any person or class of persons other than the grantee of the power is pointed to, as entitled to the proceeds from the alienation of the lands according to the power. Such is not the case with the power here. General powers are beneficial, or they are in trust. Such is the force of sections 77, 79 and 94. (And see *Wright* v. *Tallmadge*, 15 N. Y. 307, 313, 314.) The power given to Fulton Cutting by the will of Mrs. Cutting is not a power in trust, hence it is one beneficial. (15 N. Y., *supra*.) The defendants argue that the statutes have, with particularity and in detail, enumerated the various cases in which the grantee of a power shall be regarded as entitled to an interest or benefit available to his purchasers or creditors. They cite sections 81, 82, 83, 84, 86; and 85 as defining a phrase used in the other sections cited. But it will be perceived, on reading these sections, that they provide for a legal estate, either in the grantee or the grantor of the power—an estate in fee to grow out of the act therein mentioned, and make that estate an absolute one in respect to the rights of creditors and purchasers.

Those sections do not forbid the creation of the powers named in them, nor do they enumerate or define them other than as they are within the general words of other sections. What they do is to declare the effect of them upon the estate affected by them; that is to say, they give the construction that shall be put upon powers thus created. It is a mistake to suppose that these sections are exclusive or engrossing in their provisions in the respect claimed by the defendants, and that the intent or effect of them is to provide for, and declare, all the cases in which a power granted or reserved is a beneficial power. The defendants also rely upon section 92 of the article on powers. That provides " that no beneficial power, gen-

eral or special, thereafter to be created, other than such as are already enumerated and defined in that article, shall be valid." The stress of the defendants' case in this particular is upon the word "enumerated," and their claim is, that as the power granted to Fulton Cutting is not expressly within the terms of certain of the sections preceding section 92, that it is void as a beneficial power. But clearly what is a beneficial power, general or special, was defined in the sections preceding the ninety-second, and the general definition in section 79, as we have shown, included the power given to Fulton Cutting. Doubtless the strict meaning of the phrase "already enumerated" would be "already counted off," and if we should give that meaning to that phrase in the ninety-second section, we should need to look to the previous sections to find what power had been singly and expressly named as beneficial. If we did so we should find but few, viz.: one to a married woman to dispose during her marriage, and without the concurrence of her husband, of lands conveyed or devised to her in fee (§ 80); one to a tenant for life or for years to devise the inheritance (§ 84); one to a married woman to dispose during the marriage, and without the concurrence of her husband, of any estate less than a fee, belonging to her, in the lands to which the power relates (§ 87, subd. 1); one to a tenant for life of the lands embraced in the power, to make leases for not more than twenty-one years, to commence in possession during life (Id., subd. 2). Now these sections do not directly define the authority that may be given under them, to do the act permitted by them, to be a beneficial power; but they declare that a beneficial power, that is, such an authority as is by the seventy-ninth section declared and defined to be a beneficial power, may be given to certain persons, respectively, to do the acts respectively named in them. And those sections are to be read the same as if in them, in place of the phrase "beneficial power," was incorporated the definition of a beneficial power given in section 79. Section 80, for instance, is to be read as though it said: "A general power, and one, 'when no person other than the grantee has, by the terms of its creation, any interest in its execution,' may be given to a

married woman," etc. If I am wrong in this notion, then sections 80, 84, 87 are all powers that in a strict rendering of the phrase are enumerated (*i. e.*, told off singly, one by one, and in the telling off labeled as beneficial) to be found in the sections preceding the ninety-second. I do not think that sections 81, 82, 83, 85, 86 are meant to be declarations of beneficial powers. They speak of absolute powers, and apply that phrase to powers general or special or beneficial. I am clear that the word enumerated cannot have the narrow interpretation put upon it by defendants. For see, the statute authorizes the creation of general and special powers. (§ 76.) Among the special powers it authorizes is that to alienate, by will, a particular estate or interest less than a fee. (§ 78, subd. 2.) It also declares that such a special power is beneficial when no person, other than the grantee, has, by the terms of its creation, any interest in its execution. (§ 79.) The construction of that section we have already given. Clearly, these sections together define a special beneficial power, and declare that it is authorized to be created. But section 80 does not give a special power, nor does section 84. Section 87 does not give power to dispose by will. It may be said that a will may be made by a married woman during her marriage, and that it will, at her death, effect a disposition of the estate, and thus be a disposition of it by her during marriage. I think that the law-maker did not mean this. If he did, then he meant in section 85 to include a disposition by will. If that be granted, then the power to Fulton Cutting was an absolute power of disposition, and by force of sections 81, 82, 83, he took a fee absolute in respect to creditors. If that be not granted, but it be held, as I think it must, that the power to dispose in his life-time, mentioned in section 85, must be executed by an instrument operative in his life-time, then it must be held that the power "to dispose during marriage" must be executed by an instrument operative during the life of the married woman, which would not be by will; so that the three sections that we have picked out as possible to be claimed, in a strict sense, as enumerative of the beneficial powers that will be valid, do not include those which by sec-

tions 78 and 79 are defined and declared authorized. We must hold then that the law-maker did not mean to use the word "enumerated" in a strict sense, but rather synonymous with "authorized," "declared," "made legal." (See, also, per NELSON, Ch. J., *Root* v. *Stuyvesant*, 18 Wend. 271; *Wright* v. *Tallmadge*, *supra*.) I conceive that the phrase "enumerated," and "defined," is well rendered if it is referred to the seventy-ninth section, as well as any or all of the others that go before the ninety-third section, and if the definition there given be also taken as a part of the enumeration in the mind of the law-maker.

We have now reached so far in this discussion as to be able to say that the will of Mrs. Cutting created in Fulton Cutting an authority of appointment that was a lawful, general and beneficial power, within the provisions of the Revised Statutes.

We now come to another question, that is : what is the construction that the Revised Statutes put upon this power? As we have seen, the construction of it is to be governed by the provisions of those statutes. By the term "construction," the revisers and the legislature meant not merely the meaning and force of the particular words used in creating the power. They had a wider notion in the use of the word, and intended by it what should be the effect in law of the creation and execution of the power upon the property which was the subject of it, and upon all persons interested therein, closely or remotely. Thus a constructive trust is one raised by operation of law, and distinguished from one created by the express words of some written instrument. So here, it has never been adjudged, indeed, it has been adjudged to the contrary (*Holmes* v. *Coghill*, 12 Ves., *infra*), that the creation of a general beneficial power raises, in creditors, an enforceable interest at law, or in equity, in the estate .that is the subject of the power. It was the fact, *aliunde* the instrument creating the power, of the execution of it by the donee thereof, that equity took hold of to wrest the estate from the appointee under the power to the purposes of creditors of the donee. The construction of powers, is not then, under the provisions of the

Revised Statutes, a bald interpretation of the words in which the creation of the powers has been couched; but it is a determination of what is the effect of the power created, and of the execution of it, upon the property that is the subject thereof, and of whether the creditors of the grantee thereof, or his appointees, are the persons who may claim it. And as it is expressly declared, by section 73, that the construction of powers shall be governed by the provisions of that article, we are to look alone to those provisions to learn how to construe them, that is, to find what is the effect of a power, well created and well executed under them, upon the property and persons affected by it. The article of the Revised Statutes, "of powers," does contain affirmative provisions as to the effect of the powers that owners of property may see fit to create. By sections 81, 82, 83, 84, 85, 86, an absolute power of disposition, unaccompanied by a trust, given to the owner of a particular estate for life or years, or to one to whom no particular estate is limited, or where no remainder is limited on the estate of the grantee of the power, or where there is a general and beneficial power to a tenant for life or for years, to devise the inheritance, by which the grantee is enabled in his life-time to dispose of the entire fee for his own benefit, is construed to change that power into a fee, absolute in respect to the rights of creditors and purchasers, with reservatory provisions as to future estates limited thereon. Again, every power that is special and beneficial is liable in equity to the claims of creditors. (§ 93.) Again, a general power is in trust when any person or class of persons, other than the grantee of the power, is named as entitled to a part of the proceeds or benefits, from the alienation of the lands, according to the power. (§ 94.) So a special power is construed to be in trust, sometimes. (§ 95.) And other instances of legislative construction might be cited, whereby the English law of Powers has been materially departed from. (§§ 98, 99, 100, 107, 112, 113, 119.) And it is to be observed of these provisions, that the effect declared by them does not result from the execution of the power, but alone from the existence of the power. The legislature meant to make

the creation of the power affect the estate, and not to leave the effect undetermined until the grantee should have chosen to execute it, or should have died without doing so. Now these provisions are declarations of the legislative will, that whenever one wishing to create a power, does create such a power as is in any of those sections spoken of, the terms that he uses shall have the effect —that is, shall be construed—to work upon the estate and upon parties concerned, the result prescribed by this article. There are then, in the article of the Revised Statutes, "of powers," provisions for the construction of powers, and all powers are to be construed by those provisions. (§ 73.) If then we find there no provision that a general and beneficial power shall subject the estate embraced in it to the claims of creditors, shall we say that such was the intent of the legislature, or that it was its intent to subject that estate to the operation of rules of English equity? We think not. And perhaps we might stop here. But we may go further, and we will find in the report of the revisers, evidence of an intent to abrogate the rules of English equity in relation to powers, and to make the article "of powers," a complete and exclusive code on that subject. The general purpose is stated to be, to place the doctrine of powers on rational grounds. Now it is hard to call the ground rational, on which the rule of English equity was put, when the estate embraced in a power to appoint generally by will was made liable to the claims of creditors, if the power was executed, but exempt therefrom if it was not executed. The acumen of lawyers and judges forced them to see that sound logic would not tolerate so refined a distinction, and there was a struggle to carry the rule further, and to make the existence of the power, though unexecuted, subject the estate to the debts of the donee of the power. And it was sought to base it upon the proposition, that the right to dispose of property was equal to the ownership of the property. Thus, Sir Samuel Romilly in *Holmes* v. *Coghill* (12 Ves. 205) claimed that a ground to maintain the claim was that a *jus disponendi* is to be considered as property itself. (See, also, *Platt* v. *Routh*, 3

Beavan, * 257, * 274.) And Lord Hardwicke, in *Bainton* v. *Ward* (2 Atk. 172), said, in effect, that a general power of disposition is in effect property. (See, also, *Pack* v. *Bathurst,* 3 Atk. 269 ; Adams on Equity, * 99, note 1 ; *Johnson* v. *Cushing,* 15 N. H. 298.) The revisers say, that in reason and sense there is no distinction between the absolute power of disposition and the absolute ownership (5 Edm. Stat. at Large, 327) ; and that it is an affront to common sense, to say that a man has no property in that which he may sell when he chooses, and dispose of the proceeds at his pleasure. (Id. 328.) Let us notice here, however, that the terms used by the revisers do not include a power to appoint by will, they speak of a power to a man "to *sell when he chooses,* and to dispose of the proceeds at his pleasure." And so when they came to draft the law to carry out their purpose, they use the phrase " absolute power of disposition," but confine it to a power by which the grantee is enabled in his life-time to dispose of the entire fee for his own benefit. (§ 85.) Having set forth their general purpose to be that which we have above stated, the revisers become more particular, and say that a reform in the law is desirable so as to secure an observance of the formalities required in the execution of wills and deeds, the protection meant for creditors and purchasers, and the checks by which secrecy and fraud in alienation of lands are to be prevented. (Id. 326.) It is with the second of these objects that we have now to do. The revisers sought to protect creditors by declaring that an absolute power of disposition should be deemed equivalent to actual ownership (Id. 328) ; and by an absolute power of disposition, they meant a power of disposition in the life-time of the donee, or in their own words, a power by which he " may sell when he chooses, and dispose of the proceeds at his pleasure." (Id.) It will be noticed, by him who reads closely the reported cases on this topic, that at the time when the revisers drafted the article " of powers," it had seldom been held that the execution of a general power to dispose by will alone (that is, not in the life-time of the donee), or to dispose of property entirely that of another than the donee, subjected the estate to the debts of the

creditors of the donee. In *Grise* v. *Goodwin* (Freeman's Ch. 264 [in 1703]), it had been adjudged, that as the estate was never in the donee, but settled upon him by his wife's father with a power to dispose, it should not be taken as any part of his assets ; and the case was distinguished from *Thompson* v. *Towne* (2 Vern. 319), where the property was once that of the donee of the power, which will be found to be so in most of the cases usually cited on this head of the law. In *Platt* v. *Routh* (6 Mees. & Wels. * 756, * 785), as late as 1840, it was strenuously contended by counsel that a power to appoint by will alone is not a general power, and that there is not a general and absolute power unless the donee can acquire enjoyment during his own life-time. (See *S. C.*, 3 Beav. 257, and *sub nom.* *Drake* v. *Att'y-Gen'l*, 10 C. & F. 257.) The contention of counsel was not favored by the court. I will not lay much stress on these things, but I think that they help in some sort to show that the revisers did not use the words "absolute power of disposition in his life-time," without exclusive purpose, and that they meant by the provision of the article, to protect creditors from the power of a donee to sell when he chose, and to dispose of the proceeds at his pleasure. With this purpose, and this means of reaching it in view, they framed sections 81, 82, 83, 84, 85 and 86. It will bear repetition, that the last of these sections shows what they meant in these notes, when they spoke of a man having property in that which he may sell when he chooses, and dispose of the proceeds at his pleasure ; and when they speak of the power of disposition being deemed equivalent to actual ownership, they meant that power of disposition by which he was enabled, in his life-time, to dispose of the entire fee for his own benefit. (§ 85.) For the protection of creditors they framed and the legislature adopted the sections that we have just cited. And we must take it, that they deemed them sufficient, as specific provisions, to reach the object. The general provisions of the article and the rules of law would meet other cases. One indebted could not lawfully give an authority to appoint an estate away from his own creditors.

Then a power so to do would not be within the seventy-fourth section, and hence not permissible, because one that he might not himself lawfully perform. A person indebted may, by the statutes, be the grantee of a power from another to alien lands, so that his own creditors' might not reach them or the proceeds of them. Inasmuch as the lands were not his, and so not liable to his creditors before the creation of the power, it is difficult to see what natural or abstract right creditors have in them, whereby they may justly complain, for that he can exercise the power otherwise than for their good. (See 1 Story's Eq. Jur., § 176, note 1; *Comm.* v. *Duffield*, 12 Penn. St. 277.) He cannot exercise it so as to dispose of the entire fee in his life-time for his own benefit therein. (§ 85.) He may dispose of an estate or interest less than a fee for his own benefit. (§ 78.) But the grantor of the power might have done that with his own property, the subject of the power, and given no cause of offense to the creditors of the grantee of the power. It would seem, then, that all rights of creditors, either of the grantor or grantee of the power, that should exist at the time of the creation of the power, against the estate that is the subject of it, are protected by this article and by the law outside of it, which is auxiliary with it. In our judgment it was not in the purpose of the legislature to save from the abolition of powers made by section 73, the rule of English equity, upon which the plaintiff relies to obtain the judgment which he demands. The purpose of the legislature was to prevent those rights from being taken away, by the subjection to the effect of a power, of property to which they might lawfully advance a claim.

It was not the purpose to give to creditors new rights and to subject to these claims property in which they never had an interest, because the lawful owner of it saw fit to leave the future disposition of it to a power of appointment by will. The devises, by which, as powers, the rights of creditors were set at naught, are pointed out by the revisers in their notes. (5 Edm. 327.) And it is plain from this that what they meant to protect as rights of creditors were the rights which

existed against the property before the subjection of it to a power, or the rights that attached by the granting of a power of disposition to be used in the life-time of the grantee for his own benefit. The article on powers, of the Revised Statutes, will not permit a man to subject his own property to a power so as to screen it from his own creditors (§ 74); nor to place it under a power in trust so that the grantee of the power may hinder those interested in the execution unless such is the expressed will of the grantor (§§ 96, *et seq.*); nor to provide for the disposition of the entire fee of property in his life-time, and still screen it from the creditors of the latter. (§§ 81, *et seq.*) Can it be said of any property owned and devised by Mrs. Cutting, that any creditor of her or of Fulton Cutting had a right to or in it during her life-time, which right is not protected by the affirmative provisions of the article on powers, which we have pointed out? Is it irrational; is it contrary to sound principle or public policy; is it inequitable or unjust; is it preferring generosity to right or morals, that she should be permitted by the law to give a power which, while it trenches on no right of any creditor existing when the power is created, shall not be construed to beget a right in a creditor of the donee by the bare execution of it to take effect after his decease? There are some sections of the article that are cited by the plaintiff as confirming his view of the intent of the legislature. Thus, section 93 says: That every special and beneficial power is liable in equity to the claims of creditors in the same manner as other debtor interests that cannot be reached by law, and the execution of the power may be decreed for the benefit of the creditors entitled. We do not read this section as declaratory that every special and beneficial power, *ipso facto*, that it is a special and beneficial power, is liable to the claims of creditors, but as declaratory, that when a special and beneficial power, by reason of the provisions of the article operating on the terms of the power, is liable to the claims of creditors, the liability is enforceable by creditor's bill, or in any other manner that other debtor interests that cannot be reached by law may be reached in equity; and that

when the grantee of the power refuses or neglects to execute the power, or mistakes in the manner of the execution, the execution in proper mode may be decreed for the benefit of any creditor who has a right thereby. The plaintiff lays stress upon the marginal index at the side of section 93, as it appears in the Revised Statutes, saying that as these marginal indices were framed by the revisers they are indications of their conception of the meaning of the section. The index at that section is, " Beneficial powers liable to creditors ;" and from this it is argued that it was meant to make every beneficial power, in any event, liable to a creditor. It is possible that a draftsman might labor in vain to give his meaning in the extended text of his enactment and reach it in his conciser index thereto. We may not so conclude in this instance. The text of the section speaks of " every special and beneficial power." This means every power that is at the same time both special and beneficial. The quality of being special, by the necessary reading of the enactment, inheres to subject the power to the effect of the section. The index in the margin leaves out the quality of special, and hence cannot be taken as an imperative indication of the purpose of the law-maker. Now there may be a special power in which a creditor of some one may have an equitable interest and not a legal one. Such an one might be created in conformity with subdivision 1 of section 78, and the terms of the disposition empowered be such as that a creditor of some one of the persons designated have an equitable right to have the execution of the power enforced for his benefit, or, in conformity with subdivision 2 of section 78, and it be so that a creditor of the donee of the power have a right that the particular estate or interest appointed by the terms of it be subjected in equity to his debt. But every beneficial power is not also a special power. If it is a general power and is also beneficial, it may not be executed by the donee by conveyance, or charge operative in his life-time for his own benefit, without being subject to sections 81 *et seq.*, by which a fee is created in behalf of creditors, and so no need of a declaration of a liability in equity. So that every case in which the grantee of a beneficial

power may attain a benefit from it himself in his life-time is provided for to the behoof of creditors. It is apparent, too, from the nature of a general and beneficial power, that a court of equity cannot decree the execution of a power like this before us. It is a power to appoint by will, to whom the estate shall go, after the decease of the donee of the power. The choice of the future beneficiary is left to the judgment, to the inclination, nay even to the caprice of the donee of the power. A court of equity cannot frame a decree that can direct the execution of such a power for it cannot determine for the donee of the power who shall be the object that his judgment, inclination or caprice may select or turn to as the recipient of the estate.

Section 104 provides : That every beneficial power and the interest of every person entitled to compel the execution of a trust power, shall pass to the assignees of the estate and effects of the person in whom such power or interest is vested, under any assignment authorized by the provisions of the chapter of the Revised Statutes, relating to the assignment of estates of non-resident, etc., debtors. (2 R. S. 1–51.) Without reference being had to the provisions of that chapter, the effect of this section would seem to transfer every beneficial power as assets. When we read it we find that the effect of an assignment is to vest in the assignees all the interest of the assignor in any estate ; but no contingent interest passes unless it becomes vested within three years after the making of the assignment. (2 R. S. 21, § 28 ; p. 26, § 13 ; p. 30, § 9 ; p. 32, §§ 6, 9 ; p. 41, § 6.) A contingent interest is one that depends for its effect upon an event which may or may not happen. Now there is nothing in the article " of powers," that looks to the compelling of the execution by the grantee of a power that is general and beneficial. There is nothing in chapter 5, where it treats of the powers and duties of trustees (2 R. S. 41, § 7 ; p. 45, § 26), which looks to the execution of the power by the assignees of the grantee. Whether, then, the power will ever be executed is an event which may or may not happen. Now it is not contended that the Revised Statutes expressly provide for the liability of the estate,

embraced in a general and beneficial power, such as is here under notice, to the claims of creditors. The plaintiff's claim rests entirely upon the rule of English equity, and that rests entirely upon the execution of the power. (*Holmes* v. *Coghill, supra.*) The bare creation and existence of the power raised no interest in the grantee of it that would descend or that could be conveyed. (*Blagge* v. *Miles*, 1 Story, 445 ; *Reid* v. *Shergold*, 10 Ves. 370.) Can we then read section 104 as indicative of the intent of the legislature, that a general beneficial power should be liable to creditors and should pass to assignees under the debtor-acts ? The purpose of section 104 is, that every beneficial power that gives an immediate interest shall be assets for the payment of debts, and go to assignees, as does other interest in property. It was not its purpose that a general and beneficial power that may or may not be executed, as the donor of it determines, should pass to an assignee and be executed by him in the stead of the donee. The donor of the power intrusted to the donee a discretion and authority that that donor would not give to every one, and it would be a thwarting of the right which the article on powers has given to him, to put the discretion and judgment of an appointee of the law in the place of those selected and confided in by the donor.

So far, we have treated the case as though it was concerned with real estate only. The power to dispose created by Mrs. Cutting, however, affects personal estate also ; and the claim is made by the plaintiff that the provisions of the Revised Statutes that we have been considering do not take in personalty. The article in the Revised Statutes, " of powers," is found in chapter 1 part II, of that revision, and that chapter is entitled, " of real property and of the nature, qualities and alienation of estates therein." Furthermore, it is found in title 2nd of that chapter, which is entitled, " of the nature and quality of estates in real property and the alienation thereof." Furthermore, the article itself declares that a power is an authority to do some act in relation to lands. (1 R. S. 732, § 74.) And the language of the article throughout is primarily applicable to real property and not to personal. (Id., §§ 75, 77, 78, 80, 87, 89 *et seq.*) More-

over, the revisers, in their notes by saying that if the first and second articles of the title are adopted, a new regulation of powers *in relation to lands* becomes indispensable, seem to have had primarily in purpose to change the law of powers as to real estate. (5 Edm. Stat. at Large, 325.) And like expressions, with like limitation in application, are frequent therein. On these considerations the claim is founded. On the other hand it is said, if that article does not treat of powers to deal with personal property, then there is no provision of law for the creation of a power to act upon personalty, as the seventy-third section of the article has abolished all powers as they existed at law, and made the provisions of the article the sole lawful authority for the creation of powers. But I hesitate to hold that this notion may prevail, by reason of adjudications upon like expressions in the Revised Statutes. Thus those statutes declare that uses and trusts, except as authorized and modified therein, are abolished. (1 R. S. 727, § 45.) It is held, however, that the provisions of the Revised Statutes concerning uses and trusts have of themselves nothing to do with personal property, either directly or by reference. (*Kane* v. *Gott*, 24·Wend. 641, 661; *Graff* v. *Bonnett*, 31 N. Y. 9, 19, and cases cited there.) This, on the ground that the whole article is in terms confined to real estate or its rents and profits. (Id.; see, also, *Gilman* v. *Reddington*, 24 N. Y. 9, 12.) I do not find it easy to hold that the conclusion as to powers to act on personal property may not be so put in the first instance. Then it is said, to the contrary again: Though that be so, the Revised Statutes have elsewhere declared how long may be the suspension of the ownership of personal property (1 R. S. 773, § 1), and have enacted, that in all other respects, limitations of future or contingent interests in personal property shall be subject to the rules prescribed in relation to future estates in lands. (Id., § 2.) But, as per DENIO, Ch. J. (*Graff* v. *Bonnett*, 31 N. Y. 9, 18), the reference obviously is to the first article of the second title of that chapter which treats of the creation of estates in lands. (1 R. S. 721 *et seq.*, §§ 7 to 42.) That learned judge there

declared that those sections contained the rules which attach to limitations of future and contingent interests in personal property. After noticing a provision in the second article of that title " of uses and trusts," as to the non-alienability of the beneficial interest of a trust for the receipt of rents and profits, he says : That " the argument which would annex this provision to trusts of personal property would be equally strong to bring this species of property within the influence of all the provisions of the article concerning uses and trusts. *  *  *  * But the rule is notoriously otherwise." (And see id., 27.) His was not the prevailing opinion in that case. But there was no expression of differing view in that respect. I do not clearly see why the same principle must not be applied when it is sought to subject personal property to the rules of the third article of the title " of powers." While I doubt and hesitate, however, my brethren are settled in their convictions and are unanimous. They hold that personal property is no more under the rule of English equity, since the Revised Statutes, than is real estate. They think that it would be an ill-featured anomaly in the law that there should be two so inconsistent rules in the same body of law as that of English equity and that of the Revised Statutes, and that the revisers and the legislature intended that the rule which they declared in the article of powers should be as well the rule for the creation, construction and effect of powers concerning personal property. In support of this view, they say that the courts of justice have always endeavored to keep up an analogy between estates or interests in lands, and similar interests in personal property. Thus, the provision of the Revised Statutes, that where a trust is created to receive the rents and profits of lands, the surplus in a certain case is liable in equity to the claims of creditors (1 R. S. 729, § 57), is by analogy equally applicable to a trust to receive and pay over the income of personal property, though the statute is silent as to the latter. (See *Williams* v. *Thorn* 70 N. Y. 270, and citations there made.) There is certainly much force in the position that one body of law should not declare a different rule for two

kinds of property, when there is nothing in the nature of either kind of property, or in the nature and effect of the rule that calls for it. Clearly in the nature of things there is no reason why a gift or bequest of personal property, with a power of disposition, should not be measured by the same rule as a grant or devise of real estate with the same power. Nor is there cited or suggested any express provision of statute law, that stands in the way of the application of the rule of the Revised Statutes to both kinds of property. As then it is the duty of courts of justice to endeavor to preserve an analogy between estates and interests in land and the income thereof, and similar interests in personal property, the judgment of this court is that the personal estate bequeathed by Mrs. Cutting, as above stated, is alike with the real estate devised by her out of the reach of the plaintiff as a judgment creditor of Fulton Cutting.

This leads to an affirmance of that part of the judgment from which the plaintiff has appealed, and a reversal of that part of the judgment from which the defendants have appealed. As there is no likelihood of the plaintiff making a different state of facts, if a new trial should be granted, the complaint should also be dismissed with costs in favor of the defendants and against the plaintiff.

All concur as to real estate and all as to personal estate, except Folger, Ch. J., as to which he hesitates.

Judgment accordingly.