IN THE MATTER OF THE JUDICIAL SETTLEMENT OF THE ACCOUNTS OF A. MATILDA PIFFARD AND CHARLES JONES, AS EXECUTORS OF THE LAST WILL AND TESTAMENT OF DAVID PIFFARD, DECEASED.

*Will — power of a testator to provide that a bequest shall, in case of the death of the legatee before the death of the testator, go as directed in a will then or thereafter to be executed by the legatee.*

By his will, dated July 24, 1876, David Piffard directed his executors to sell all his property, real and personal, and after the payment of his debts and funeral expenses he gave and bequeathed one-fifth of the remaining proceeds to his daughter, Sarah Eyre Piffard. By a codicil dated April 24, 1878, after making changes in the executors named in the will, and confirming it in every respect not modified by the codicil, he added: " I do hereby direct that my said daughters, Sarah Eyre Piffard and Ann Matilda Piffard, named in my said will, shall have power, by their several wills heretofore or hereafter duly made and executed, to dispose of, devise and bequeath the share of my estate devised and bequeathed to them severally in and by my said will, and to that end I direct that such share or shares shall be paid over by my said executors to the executors or trustees named in and by the several wills of my said daughters, in case of the death of them, or either of them, in my lifetime, instead of to my said daughter or daughters; but if my said daughters shall survive me, then such shares shall be paid to them severally as now provided in and by my said will."

By codicils, made in 1878, 1880, 1881 and 1882, in one of which reference was made to the death of his daughter, Sarah Eyre Piffard, slight changes were made, the will being in all other respects in each case confirmed. Sarah Eyre Piffard died on August 26, 1881, leaving a will made on August 21, 1880, by which she disposed of all her property, which will was admitted to probate, and letters testamentary were issued to the persons named by her as executors on September 30, 1881.

David Piffard died in 1883, and his will was duly admitted to probate in that year,

*Held,* that the legacy, given to Sarah Eyre Piffard, did not lapse upon her death and that it should be paid by the executors of the will of David Piffard to her executors.

APPEAL from a portion of a decree of the Surrogate's Court of Livingston county.

By his will, under date of July 24, 1876, David Piffard directed his executors to sell all his property, real and personal, and after the payment of his debts and funeral expenses he gave and bequeathed one-fifth of the remaining proceeds to his daughter, Sarah Eyre Piffard. By a codicil of the date of April 24, 1878, he made some change in the executors named in his will, which he confirmed in every respect not modified by the codicil, and added : " I do hereby direct that my said daughters, Sarah Eyre Piffard and Ann Matilda Piffard, named in my said will, shall have power, by their several wills heretofore or hereafter duly made and executed, to dispose of, devise and bequeath the share of my estate devised and bequeathed to them severally in and by my said will, and to that end I direct that such share or shares shall be paid over by my said executors to the executors or trustees named in and by the several wills of my said daughters in case of the death of them, or either of them, in my lifetime, instead of to my said daughter or daughters ; but if my said daughters shall survive me, then such shares shall be paid to them severally as now provided in and by my said will."

He made another codicil of the date of April 24, 1878, by which he made a further change of executors and declared his confirmation of the previous codicil.

On March 6, 1880, he, by codicil, made some additional changes of executors, and in all other respects confirmed his will and the two previous codicils. By another codicil of date September 7, 1881, he refers to the death of his daughter Sarah Eyre Piffard, who had before been named as one of the executors of his will, makes some slight changes affecting no question here, and ratified and confirms the will and codicils except as thereby expressly changed. And on June 3, 1882, he makes another codicil, in which he says : " I hereby ratify and confirm my said will and the four foregoing codicils thereto except as the same are expressly changed or modified by this codicil." He died June 27, 1883, and his will and the codicils were admitted to probate September 3, 1883, and letters testamentary issued to the executors.

Sarah Eyre Piffard made her will August 21, 1880, by which she made disposition of all her property. She died August 26, 1881,

and her will went to probate, and letters testamentary were issued to the executors by her nominated September 30, 1881.

The executors of the will of David Piffard proceeded on the assumption that the legacy to Sarah Eyre Piffard, by reason of her death before that of their testator, had lapsed, and that he died intestate as to that one-fifth of his estate bequeathed to her, and made distribution of it amongst his next of kin. And upon their accounting the executors filed an account accordingly.

This was contested. And the surrogate determined that the legacy of one-fifth to Sarah Eyre Piffard had not lapsed, but that the power of appointment was executed by her will, and that such one-fifth, amounting to $6,005.94, should be paid by the distributees receiving it to the executors of her will. Decree was entered accordingly, from which this appeal is taken by the executors of the will of David Piffard.

*John R. Strang*, for the executors, appellants.

*George F. Yeoman*, for the executors of Sarah Eyre Piffard, respondents.

*F. H. Wilson*, for Emma Piffard, contestant and respondent.

BRADLEY, J.:

The question presented is whether the legatees of the will of Sarah Eyre Piffard are entitled to the one-fifth part of the estate of David Piffard, deceased, by virtue of the power of appointment and direction given by his will.

If their right depended upon a mere power given by his will, without any other supporting provisions, and the execution of it by her will, there might be some difficulty in supporting their claim in view of the provisions of her will, and of the fact of her decease prior to that of the donor of the power. (*Jones* v. *Southall*, 32 Beav., 31.) And a like difficulty would be apparent if the affirmative finding of intent, in fact, on her part to execute the power, were requisite to such result. But the provisions of the will of David Piffard go farther and make the will of his daughter operate as execution of the power, in the event only that he survive her, otherwise the fund goes to her as its sole beneficial legatee. And the rule of the common

law requiring affirmative evidence, in a will of intent to execute by it a power of appointment for its consummation, has been abrogated by the statute which provides that "lands embraced in a power to devise shall pass by a will purporting to convey all the real property of the testator, unless the intent that the will shall not operate as an execution of the power, shall appear expressly or by necessary implication." (1 R. S., 737, § 126.) The rule declared by this statute is applicable to personal as well as to real property. (*Cutting* v. *Cutting*, 86 N. Y., 522; *Hutton* v. *Benkard*, 92 id., 296.)

It is, however, contended on the part of the appellants that her intent that her will should not operate as an execution of the power does appear by necessary implication, because her death was nearly two years prior to that of her father, and by her will the intent appears to dispose by it of *her* property only. It is quite true that the power expressed in his will did not become effectual as such until his death, and that at the time of her decease the fund in question was no part of her property, and her will was ineffectual to vest, at that time, any right to it in her legatees.

While no greater force could be given to her will than it then had, the operation of its provisions may have become effectual, in some future event, to afford and vest rights which were inchoate at the time of her death. If permitted to apply to personal property, the statutory term applicable to powers as such, that given by the will of David Piffard, may be treated as a general and beneficial power. (1 R. S., 732, §§ 77-79.) No person other than the donee of the power had any interest in its execution; and there is no apparent difficulty arising out of her death prior to that of the donor in the consummation of the execution of it, through the will of the former, if the provisions of the wills of both of them are such as to fairly require that result. This situation renders the consideration of the purpose of the father, as found in his will, somewhat important. He evidently intended to dispose of all his property by his will, and his purpose in that respect should be effectuated if circumstances permit. (*Vernon* v. *Vernon*, 53 N. Y., 351.)

The situation which he had in view, to give effect to the execution of the power, was his survival of the donee of the power, and in that event only, he directed the payment of the fund (the one-fifth of the proceeds of his estate) to the executors of her will. Such

direction is, in that event, unqualified by any provision of his will, but it may be deemed dependent upon the sufficiency of the provisions of the will of his daughter to dispose of the fund.

This right of execution of the power and disposition of the fund was not confined to a testamentary instrument made after that of the donor, by which the power was created, but he expressly gave the effect of execution of the power to the will of the donee, if it had been before then made. It would, therefore, seem that the execution of the power was not by him made dependent upon the actual intent in fact of the donee at the time of making her will, but only on the sufficiency of its provisions to carry the fund and permit her executors to dispose of or distribute it.

Miss Piffard disposed of all her property, by the terms of her will, and the words "my property," which she used in the will, cannot fairly be treated as words of limitation to property, the title to which was vested in her at the time of her decease, but embraced all property which she then or in any future event had the right to dispose of by her will pursuant to any power devolved upon her. (1 R. S., 737, § 126 ; *Hutton* v. *Benkard*, 92 N. Y., 295–301.) As the inquiry proceeds it is seen that after the death of the donee, and again eight months after her will was admitted to probate, the donor of the power, by further codicils to his will, distinctly ratified and confirmed the provisions of his will, giving the power of appointment and the direction to pay the fund to the executors of her will. He thus continues to speak not only from the time those provisions were inserted in his will, but speaks also as of the time of the execution of the codicils. (*Brown* v. *Clark*, 77 N. Y., 369–375.) And while they do not have the effect to add any force to the provisions of the will as before made, the confirmatory declarations in the codicils, after the death of his daughter and after the probate of her will, go in support of and seem to require the conclusion that his purpose was that the fund in question should pass by her will to the legatees named in it. Whatever views may be entertained of the intent in fact of the donee, the legal effect of the provisions of the will of David Piffard was to impress upon her will the intent on her part to execute the power and to pass the fund to her legatees. This view effectuates the apparent intent of the donor and, as we think, violates no rule of construction or of law.

In *White* v. *Hicks* (33 N. Y., 383 ; affirming S. C., 43 Barb., 64) much discussion would have been obviated if the rule of intent declared by the statute had then been treated as applicable to powers relating to personal as well as real property. No other questions seem to require consideration.

The decree should be affirmed.

SMITH, P. J., and BARKER, J., concurred ; HAIGHT, J., not sitting.

Decree affirmed, without costs.