(28 Misc. Rep. 686.)

FIRST NAT. BANK OF PLAINFIELD, N. J., v. MORTIMER et al.

(Supreme Court, Special Term, New York County. August, 1899.)

1. TRUSTS—TRUST FOR DEBTS OF CESTUI—DEBTS OF BENEFICIARY—LIABILITY OF FUND.
   Neither the principal nor income of a fund bequeathed by defendant's mother to a trustee to apply the income therefrom to the use of defendant during his life, and which gave him power to dispose of the fund by will, can be subjected to the payments of his debts, even for necessaries.

2. SAME—SURPLUS OVER NECESSARY EXPENSES.
   It is impossible for a court of equity to determine how much of an income from a fund bequeathed to a trustee in trust for the benefit of a

debtor is necessary for his proper support, so as to devote a surplus to the payment of his debts, hence such surplus cannot be reached.

8. SAME—DISPOSITION OF INCOME BY CESTUI QUE TRUST.
   A cestui que trust cannot make a binding disposition of the income of property bequeathed to a trustee for his benefit, or one which the trustee is bound to recognize.

Action for the construction of a will brought by the First National Bank of Plainfield, N. J., against John Mortimer and another. Judgment for defendants.

Charles S. Foote, for plaintiff.
Wilder & Anderson, for defendants.

RUSSELL, J. The plaintiff, a creditor of John Mortimer, seeks to impose both upon the principal and income of the fund a lien for its claim against the defendant John Mortimer, and to have that lien executed by a diversion of sufficient of the income, or, if necessary, the principal, from the trustee. to satisfy its claims. The theory of the action is that the principal fund was bequeathed and devised to the debtor, Mortimer, in such a manner, by his mother, Frances R. Mortimer, deceased, that in law it is subject to the claims of the creditors, and that the income is more than sufficient for his needs, so that, at all events, the surplus should be devoted to the payment of his debts, and especially those held by the plaintiff, which are claimed to be for necessaries of life for himself and family. By Mrs. Mortimer's will, she gave, devised, and bequeathed one of four equal shares of her estate unto the Farmers' Loan & Trust Company, of the city of New York, to invest, receive the rents, issues, and profits, and apply the income from time to time to the use of her son, John Mortimer. Upon his death the trust company was directed to convey and pay that one-fourth share to the lawful issue of John Mortimer, unless the said John Mortimer should, by his last will and testament, otherwise direct; and she further directed that John should have full power to dispose of that share after his death, notwithstanding the creation of the trust estate. It is argued with great diligence and ingenuity that by the scheme of the will John not only has the beneficial enjoyment, during life, of the share bequeathed and devised in trust, but the same power of disposition which any owner would have; and therefore the combination of the entire benefits of the share, with the power of transmitting it by will, gave to him, in the theory of the law, the absolute estate, at least so far as the claims of creditors are affected. Many citations are made of the older authorities, sustaining a portion of the argument by which the plaintiff's counsel seeks to reach this conclusion. But it must be remembered that the devolution of estates, transmissible through the execution of uses and trusts and powers, is now governed wholly by the provisions of the Revised Statutes of the state of New York, so far as this state is concerned. It must also be remembered that the effort of the courts of this state is to ascertain and effectuate the intent of the testatrix, who has the power of disposition accorded to all owners of property, and construe the provisions of her will in accordance with such intent, unless they transgress some rules of public policy. She had the

power to say that John Mortimer, her son, should receive no part of her estate. She was, however, mindful of the situation of a son brought up in an affluent family in the city of New York, accustomed to the liberal receipt of money for his own uses, and, at the time of making her will, with a wife and three children dependent upon him for maintenance. Knowing him full well, she may have had entire confidence in his intention to honorably conduct his life, and make a just disposition of the property she gave, to take effect at his death, while at the same time she may not have felt the same assurance of his capacity to deal with business judgment, and a wise provision for the future, as to the corpus of the estate during his own life, and may have felt that, whatever resolutions he might form, the ease of obtaining credit, if in possession of considerable property which he was at liberty to deal with in life as he pleased, might insensibly bring obligations not presently felt, because distant in redemption, but which might ultimately eat up all that her bounty gave to him, and leave himself, wife, and children in poverty; thus wholly and absolutely destroying the benefits of the provision she made for him and them, without any willful or even reckless intent on his part to accomplish such a result. She therefore wisely provides for him and his family for life out of the net income of her own property, and, perhaps as wisely, assures him of her confidence in his sense of justice by leaving to him the power of disposition of the principal fund by an instrument to take effect only upon his death. Our statutory law has recognized the wisdom of allowing a father or a mother to provide for a son or daughter, so that son or daughter shall get an assured income during life, and may have a power of appointment of disposition at death; and the old rule of the common law that this property forms a part of the assets of the child, and is subject to the claims of creditors, is now abolished, both as to personalty and realty, the article on powers being a complete and exclusive code on that subject, so that here the beneficial life trust is isolated from the efficacy of the power. Cutting v. Cutting, 86 N. Y. 522, approved Hutton v. Benkard, 92 N. Y. 305; Cook v. Lowry, 95 N. Y. 111; Crooke v. Kings Co., 97 N. Y. 435; Genet v. Hunt, 113 N. Y. 158, 21 N. E. 91; Greenland v. Waddell, 116 N. Y. 234, 22 N. E. 367. The trust estate of $50,000 furnishes to the defendant John Mortimer for the support of himself and family the modest income of $2,400 per year. That is a very limited income to one brought up by his parents to luxury, and perhaps expensive habits. In considering the exigencies of life, the occasions which bring sickness, and expenses which may not be foreseen or calculated to a nicety, the requirements, to some extent, of social obligations, and the right to consider for a moderate extent the claims of charity and benevolence as a part of even the necessities of life, in addition to those expenses necessarily incurred to clothe the body and feed it, and afford even a narrow education to the children, it is utterly impossible for a court to draw with any degree of accuracy a line of the limit of proper expenditures for living which shall place any portion of this income beyond the boundary. And the very fact that, without evidence of extravagant expenditures by Mortimer or his family, debts have been incurred beyond the income received, which are repre-

sented by the claims of this plaintiff, well illustrates the difficulty of a decision by the court that the income afforded by the trust fund is so large as to justify placing its forcible hand upon the surplus, and handing it to creditors who have trusted the recipient of that income with proper opportunity of knowing what his legal claims to property were. Nor does the fact of a surplus at any given time, not drawn from the trustee, of a few hundred dollars, indicate that the income is too large for the wants of the beneficiary. Such surplus is temporary, and the evidence shows that it may have been, and perhaps should have been, devoted to payment of obligations for the necessaries of life.

The power of attorney authorizing the cashier of the plaintiff to receive the income, while it shows the willingness of the debtor, at that time at least, to pay his obligations, or provide for their payment, adds no force to the claim of the plaintiff here. If John Mortimer could not, by any instrument, surrender his right to that income, and violate the wishes of the mother, who created the bounty, he could not give an irrevocable power of attorney which would accomplish such a result. No interest in the trust could be assigned by him, or recognized by the trustee. 1 Rev. St. p. 730, §§ 63, 65; Graff v. Bonnett, 31 N. Y. 12. The complaint is dismissed, with costs.

Complaint dismissed, with costs.